2007 ME 146

**Joshuia C. RYDER et al.**

v.

**USAA GENERAL INDEMNITY CO.**

Supreme Judicial Court of Maine.

Argued: June 19, 2007.
Decided: Dec. 6, 2007.

Arthur Greif (orally), Gilbert & Greif, Bangor, for appellants.

Jack D. Miller (orally), Regnier, Taylor, Curran & Eddy, Hartford, CT, for appellee.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, and MEAD, JJ.*

LEVY, J.

[¶ 1] Joshuia C. Ryder and Nettie A. Ryder appeal from a summary judgment entered in the Superior Court (Penobscot County, *Hjelm, J.*) on their complaint for a declaratory judgment to determine the existence of underinsured coverage under a policy with USAA General Indemnity Company. They contend that the court erred when it concluded that their bystander claims for negligent infliction of emotional distress are not claims for "bodily injury" within the policy's definition. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] In August 2002, nineteen-month-old Daisy Ryder was tragically struck and killed by a vehicle driven by Robert Donath moments after she had exited her mother Nettie's parked car. Nettie witnessed the accident, as did her son and Daisy's brother, then age two-and-a-half.

[¶ 3] At the time of the accident, Donath was insured under a policy from Progressive Northern Insurance Company with liability limits of $50,000 for each person and $100,000 for each accident. Nettie was insured under her husband Joshuia's USAA auto policy, which has split uninsured/underinsured motorist (UIM) limits of $50,000 for each person and $100,000 for each accident.

[¶ 4] Joshuia and Nettie filed a complaint in the Superior Court against Donath asserting three claims arising out of the accident: (1) wrongful death of Daisy Ryder brought on behalf of her estate by Joshuia; (2) negligent bystander distress to Nettie; and (3) negligent bystander distress to her son.

[¶ 5] The Ryders also sought declaratory judgments against USAA and Progressive Insurance to establish the amount of coverage available under Donath's Progressive Insurance policy and the underinsured coverage available under the Ryders' USAA policy. The Progressive policy defined the $50,000 "each person" limit as including not only the "total of all claims made for bodily injury to a person" but also "*all claims of others derived* from such bodily injury, including, but not limited to, emotional injury or mental anguish resulting from the bodily injury of another or *from witnessing the bodily injury to another ....*" (Emphasis added.) Accordingly, the policy's "each person" limit explicitly encompasses the estate's wrongful death claim and Nettie and her son's derivative bystander distress claims so that no more than $50,000 of liability coverage was available under the Progressive policy.

[¶ 6] The USAA policy's UIM coverage, on the other hand, insured against "[bodily injury] sustained by any person in any one auto accident." [1] The USAA poli-

---

* Justice Susan Calkins sat at oral argument and participated in the initial conference but retired before this opinion was certified.

1. The relevant provision of the policy provided:

 A. Subject to Paragraph B below, for BI [bodily injury] sustained by any person in any one auto accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by

any person, is the limit of liability shown in the Declarations for "each person," for UM [uninsured motorist] coverage. Subject to this limit for "each person," the limit of liability shown in the Declarations for "each accident" for UM is our maximum limit of liability for all damages for BI [bodily injury] resulting from any one auto accident. These limits are the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums

cy defines "bodily injury" as "bodily harm, sickness, disease or death." If Nettie and her son's bystander distress claims constitute separate claims for "bodily injury" under the policy, then the $100,000 per accident limit would apply and there would exist $50,000 of underinsured motorist coverage available under the USAA policy.

[¶ 7] Progressive subsequently settled the Ryders' claims against Donath for Progressive's full "each Person" policy limit of $50,000. The Ryders agreed to dismiss their remaining claims against Progressive and Donath, and the court granted them leave to amend their complaint to recast their declaratory judgment action as one solely relating to the limits for UIM coverage under the USAA policy. Their second amended complaint sought a declaratory judgment that the USAA policy's per accident coverage limit of $100,000 applied, rather than the per person limit of $50,000. If the claims invoke the greater limit of $100,000, then the USAA policy will provide $50,000 of UIM coverage because that will be the amount that is available beyond the applicable $50,000 limit of the Progressive policy.

[¶ 8] The Ryders and USAA filed opposing motions for summary judgment, with the Ryders seeking partial summary judgment on whether bystander emotional distress is included within the USAA policy's UIM coverage for "bodily injury."

[¶ 9] The Superior Court found the coverage issue raised in the Ryders' motion to be dispositive of the case, concluding that:

[T]he term "bodily injury" as defined in the contract unambiguously does not include a claim for bystander emotional distress. The psychic distress that characterizes a claim for bystander recovery simply is qualitatively different

tha[n] any of the four conditions that constitute "bodily injury." The plain and unambiguous language in the USAA policy does not allow the meaning of that phrase to be expanded to include injuries that are other than "bodily," that is, corporeal. Rather, the four conditions that are the definitional constituents of a "bodily injur[y]" all are characterized by physical harm or compromise to the body without reference to psychic damage.[ ]

The court found support for its position in the Massachusetts case *Allstate Ins. Co. v. Diamant*, which concluded that " 'bodily injury' ... encompasses only physical injuries to the body and the consequences thereof." 401 Mass. 654, 518 N.E.2d 1154, 1156 (1988). The court also found support for its position in *Gillchrest v. Brown*, in which we determined that a loss of consortium claim is not a claim for "bodily injury." 532 A.2d 692, 693 (Me.1987).

[¶ 10] Accordingly, the court determined that the Ryders' liability claims were sufficient to trigger only the $50,000 per person coverage limit of the USAA policy, and not the $100,000 per accident coverage limit. Because Progressive had settled for $50,000, there was no difference between what had been paid to the Ryders and the limit of the USAA policy. The court therefore concluded that there was no underinsured coverage available under the USAA policy and entered a summary judgment on all claims in favor of USAA. Because the court found the coverage issue dispositive, it did not reach any of the issues raised in USAA's motion for summary judgment The Ryders appeal.

## II. DISCUSSION

### A. Standard of Review

[¶ 11] The meaning of the language in an insurance contract is a ques-

shown in the Declarations, premiums paid,

or vehicles involved in the accident.

tion of law we review de novo. *Patrons Oxford Ins. Co. v. Harris,* 2006 ME 72, ¶ 7, 905 A.2d 819, 824. "In contrast with the liberal construction to be given the remedial statute mandating uninsured motorist coverage," *Wescott v. Allstate Ins.,* 397 A.2d 156, 167 (Me.1979), "[a]ny ambiguity in an insurance policy must be resolved against the insurer and in favor of coverage." *Foremost Ins. Co. v. Levesque,* 2005 ME 34, ¶ 7, 868 A.2d 244, 246. "An insurance contract is ambiguous if it is reasonably susceptible of different interpretations." *Kinney v. Me. Mut. Group Ins. Co.,* 2005 ME 70, ¶ 18, 874 A.2d 880, 885.

▊ [¶ 12] Furthermore, in an appeal from the grant of a summary judgment, we consider the facts in the light most favorable to the party against whom judgment was granted to determine if a genuine issue of material fact exists and if the successful party was entitled to judgment as a matter of law. *Lightfoot v. Sch. Admin. Dist. No. 35,* 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

## B. "Bodily Injury" in the USAA Policy

[¶ 13] The USAA policy defines "bodily injury" as "bodily harm, sickness, disease or death." The Ryders contend that the policy's definition of "bodily injury" is ambiguous, and must therefore be construed against USAA to include bystander emotional distress. USAA contends that "bodily injury" is not ambiguous, and that, under the only reasonable interpretation that would give the word "bodily" any meaning, it is restricted to corporeal or physical injuries.

[¶ 14] Numerous courts have addressed the term "bodily injury" in the context of insurance contracts. Although some of these cases involve policies that leave "bodily injury" undefined, *see Transamerica Ins. Co. v. Doe,* 173 Ariz. 112, 840 P.2d 288, 291 (Ct.App.1992); *Farm Bureau Mut. Ins. Co. v. Hoag,* 136 Mich.App. 326, 356 N.W.2d 630, 632 (1984), most involve policies that included a specific definition of "bodily injury." The definitions of "bodily injury" provided by these insurance policies frequently fall into one of two categories: (1) "bodily" followed by the noun series: "injury [or harm], sickness, or disease," [2] or (2) this same noun series with an additional nonrestrictive clause such as "including death resulting therefrom." [3]

[¶ 15] USAA correctly argues that the majority of the jurisdictions that have considered the matter have held that "bodily injury," when either undefined or defined as "bodily" followed by the noun series "injury [or harm], sickness or disease" is unambiguous and encompasses only physical harm. *See Citizens Ins. Co. of Am. v.*

---

**2.** *See, e.g., Aetna Cas. & Sur. Co. v. First Sec. Bank,* 662 F.Supp. 1126, 1128 (D.Mont.1987) ("The policy defines 'bodily injury' as 'bodily injury, sickness or disease.' "); *Washington v. State Farm Fire & Cas. Co.,* 629 A.2d 24, 26–27 (D.C.1993) (policy defining "bodily injury" as "bodily harm, sickness, or disease"); *Rolette County v. Western Cas. & Sur. Co.,* 452 F.Supp. 125, 127 (D.N.D.1978) (policy defining "bodily injury" as "bodily injury, sickness or disease sustained by any person").

**3.** *See, e.g., Smith v. Animal Urgent Care, Inc.,* 208 W.Va. 664, 542 S.E.2d 827, 829 (2000) (" 'Bodily Injury' means bodily injury, sickness or disease sustained by a person, includ-

ing death resulting from any of these at any time,"); *Chatton v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 10 Cal.App.4th 846, 13 Cal. Rptr.2d 318, 322 (1992) ("In the definition of the CGL policy, 'bodily injury' means: 'bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom....' "); *Nat'l Cas. Co. v. Great Southwest Fire Ins. Co.,* 833 P.2d 741, 746 (Colo. 1992) (policy defining bodily injury as "bodily injury, sickness, or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom").

*Leiendecker,* 962 S.W.2d 446, 452–53 (Mo. Ct.App.1998) (collecting cases). This result conforms to the standard grammatical rule that when an adjective modifies the first of a series of nouns, a reader will expect the adjective to modify the rest of the series as well (i.e. "bodily injury, [bodily] sickness, or [bodily] disease"). *See Lewis v. Jackson Energy Coop. Corp.,* 189 S.W.3d 87, 92 (Ky.2005) (stating "the first adjective in a series of nouns or phrases modifies each noun or phrase in the following series unless another adjective appears"); *see also Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.,* 114 Cal. App.4th 548, 7 Cal.Rptr.3d 844, 849 (2003) ("Most readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears.").

[¶ 16] Other courts, when faced with policy definitions different from that considered in the majority of the cases on point, have been willing to break from the majority view. The Wyoming Supreme Court, for example, held "bodily" did not modify "sickness, disease or death" when faced with a policy defining "bodily injury" as "bodily harm to or sickness, disease or death of any person." *Evans v. Farmers Ins. Exch.,* 34 P.3d 284, 286–87 (Wyo. 2001). The court in *Evans* noted the grammatical structure of the policy at issue did "not fit squarely within the majority rule" and declined to find "bodily" modified "sickness" or "disease." *Id.* at 286–87; *see also Crabtree v. State Farm Ins. Co.,* 632 So.2d 736, 739, 743 (La.1994).

[¶ 17] The USAA policy does not contain the same definition of "bodily inju-

ry" considered in the overwhelming majority of cases. Rather, it defines "bodily injury" as "bodily harm, sickness, disease *or death*" (Emphasis added.) Here, when the standard grammatical rule is applied, the adjective "bodily" modifies not only "harm," "sickness," and "disease," but also "death." The phrase "bodily death," although relevant in the spiritual realm, carries little meaning in the secular world of insurance contracts. Given the grammatical structure employed in this definition, it is unclear whether "bodily" is intended to modify all of the nouns that follow it.[4] We therefore find the policy's definition of "bodily injury" ambiguous.

[¶ 18] As previously stated, any ambiguity in an insurance policy must be resolved against the insurer and in favor of coverage. *Foremost Ins. Co.,* 2005 ME 34, ¶ 7, 868 A.2d at 246. Because the ambiguous definition of "bodily injury" in the USAA policy must be construed in favor of coverage, we conclude that the words "sickness" and "disease" are not modified by the word "bodily" in the policy and serve instead to expand coverage beyond "bodily harm."

[¶ 19] Accordingly, we turn to consider whether the Ryders' claims for emotional distress invoke the USAA policy's UIM coverage for "sickness" or "disease."

C. Emotional Distress as a "Sickness" or "Disease"

[¶ 20] "Sickness" is defined in pertinent part as: "the condition of being ill[;]

---

4. We are mindful that the Washington Supreme Court reached the opposite conclusion when faced with an insurance policy containing the same definition of "bodily injury" as found in the policy at issue here. *See Daley v. Allstate Ins., Co.,* 135 Wash.2d 777, 958 P.2d 990, 995 (1998). Relying on decisions in other jurisdictions involving the phrase "injury,

sickness, or disease," the court in *Daley* concluded that "bodily" modified every word in the noun series, including "death." *Id.* In doing so, however, the court failed to address the grammatical difference between the definition before it and the definitions at issue in the other published opinions. *Id.*

... a disordered, weakened, or unsound condition[;] ... a form of disease: MALADY." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2111 (2002). "Sickness" is not restricted to physical maladies and may include a condition of the mind. Similarly, "disease" is defined in pertinent part as: "disorder or derangement (as of the mind, moral character, public institutions, or the state)." *Id.* at 648. Thus, conditions pertaining to the mind are expressly included within the definition of "disease." The language of the USAA policy, through its provision of coverage for "bodily injury" that includes "sickness or disease," extends coverage to sicknesses and diseases that are not corporeal.

[¶ 21] In this case, the Ryders allege generally that Nettie and her son suffered "emotional distress" as a consequence of having witnessed Daisy's death. To establish a claim for bystander emotional distress, our decisions require proof that the injured party has suffered "[s]erious emotional distress." *Carter v. Williams*, 2002 ME 50, ¶ 22, 792 A.2d 1093, 1099 (emphasis added). "Serious emotional distress exists where a reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2, ¶ 11, 722 A.2d 1269, 1272 (quotation marks omitted). "The distress does not have to be manifested by objective symptomatology." *Id.* (quotation marks omitted).

[¶ 22] The serious emotional distress a person experiences from having witnessed an accident may or may not also qualify as a diagnosable sickness or disease. This issue generally turns on the diagnostic opinion of a qualified medical or mental health practitioner, *see Pekin Ins. Co. v. Hugh*, 501 N.W.2d 508, 512 (Iowa 1993), based at least in part on the patient's objective symptomology. For example, if a person's mental health medical practitioner employs the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994) (DSM–IV), she might experience a significant traumatic event without then qualifying for the diagnosis of post-traumatic stress disorder. Under the DSM–IV, even where an individual meets the criteria for a mental disorder, that individual cannot be diagnosed as suffering from that disorder unless they have "clinically significant impairment or distress." *Id.* at 7.[5] Accordingly, as applied to the UIM coverage provided by the USAA policy at issue in this case, the Ryders must not only show that they suffered emotional distress that was serious, they must also demonstrate that the distress constitutes a diagnosable sickness or disease in order for coverage to exist.

## III. CONCLUSION

[¶ 23] We conclude that the USAA policy provides UIM coverage in connection

---

5. This concept is more fully explained by the definition of "mental disorder" set forth in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at xxi-xxii:

In DSM–IV, each of the mental disorders is conceptualized as a clinically significant behavioral or psychological syndrome or pattern that occurs in an individual and that is associated with present distress (e.g., a painful symptom) or disability (i.e., impairment in one or more important areas of functioning) or with a significantly increased risk of suffering death, pain, disability, or an important loss of freedom. In addition, *this syndrome or pattern must not be merely an expectable and culturally sanctioned response to a particular event, for example, the death of a loved one.* Whatever its original cause, it must currently be considered a manifestation of a behavioral, psychological, or biological dysfunction in the individual.

(Emphasis added.)

with a negligence claim for bystander distress, but only if the claimant has suffered serious emotional distress that constitutes a diagnosable sickness or disease. Although we vacate the summary judgment awarded to USAA, the Ryders are not entitled to an award of a summary judgment because they have not yet been put to their proof on the question of whether Nettie and her son's alleged serious emotional distress qualifies as a sickness or disease.

The entry is:

Judgment vacated, and remanded to the Superior Court for further proceedings consistent with this opinion.