IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 8, 2012 Session

## JERRY GARRISON ET AL. v. RITA BICKFORD ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Bledsoe County**
**No. 4236    Buddy D. Perry, Judge**

————————————

**No. E2010-02008-SC-R11-CV – Filed August 22, 2012**

————————————

Following an accident which claimed the life of their teenage son, the deceased's parents
filed claims for wrongful death and negligent infliction of emotional distress against the
driver and owner of the car that struck their son. The parents also sought to recover from
their own insurance company under the uninsured motorist provisions of their policy. The
driver of the car settled, paying the deceased's parents $25,000 for their wrongful death claim
and $25,000 for their negligent infliction of emotional distress claim. The parents' insurer
paid them an additional $75,000 for the wrongful death claim but refused to pay any damages
for their emotional injuries. The insurer contended that (1) emotional distress did not
constitute "bodily injury" as defined in the policy, and (2) the "Each Person" limit in the
policy had been met, thereby exhausting any available coverage. The parents maintained that
recovery for emotional harm was not precluded under the policy definition of "bodily injury"
and that the "Each Person" limit had not been met. The trial court agreed with the parents
and ruled in favor of coverage. The Court of Appeals reversed. We granted the parents'
application for permission to appeal to decide whether "bodily injury" as defined in the
policy includes mental injuries standing alone. It does not. The judgment of the Court of
Appeals is affirmed.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Affirmed**

CORNELIA A. CLARK, C.J., delivered the opinion of the court, in which JANICE M. HOLDER,
GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Joseph H. Crabtree, Jr., Athens, Tennessee, for the appellants, Jerry Garrison and Martha
Garrison.

Joseph B. Klockenkemper, II, Nashville, Tennessee, for the appellee, State Farm Mutual Automobile Insurance Company.

## OPINION

### Factual and Procedural History

On June 9, 2006, a car driven by Andy Bickford struck and killed eighteen-year-old Michael Garrison, who was riding a minibike on a road near his home. Garrison's parents, Jerry and Martha Garrison,[1] and younger brother, Daniel Garrison, heard, but did not see, the collision. Jerry and Daniel Garrison, the first people to arrive at the scene, observed the deceased's injuries. Mr. Garrison testified that the deceased was "barely breathing [and] blood [was] flowing everywhere." Mr. Garrison waited with his critically injured son more than an hour for an ambulance to arrive. Mrs. Garrison testified that when she arrived at the scene a crowd had already gathered and she "was screaming for [Michael], to tell him I was there. I just was calling to him the whole time . . . telling him that I was there and to hang on." The young man was airlifted to a hospital in Chattanooga where he died from his injuries.

The Garrisons filed claims for wrongful death and negligent infliction of emotional distress against Andy Bickford and the owner of the car, Rita Bickford. The complaint, along with an amended complaint, alleged that Andy Bickford was intoxicated, speeding, and traveling in the wrong lane at the time of the accident. The suit further alleged that he did not immediately stop following the collision, and after stopping his car, he fled the scene. The complaint also alleged that Rita Bickford negligently entrusted her vehicle to Andy Bickford because she was aware of his propensity to drive at excessive speeds, drive recklessly, and operate a vehicle while under the influence of alcohol or drugs. According to the complaint, the Garrisons, upon hearing the collision, went to render aid when they saw the deceased's "mangled body" face down in a ditch beside the road. As a result of what they saw, the Garrisons "suffered grief, fright, shock, depression, loss of sleep and other problems" for which they sought compensatory damages.

In addition to filing suit against the Bickfords, the Garrisons served a copy of the complaint upon their own insurance company, State Farm Mutual Automobile Insurance

---

[1] It is unclear from the record whether Mrs. Garrison's correct name is Mary, Martha, Margaret, or Mary Margaret, for all of these names are used to refer to her. For our purposes, this uncertainty is of no consequence.

Company ("State Farm"), pursuant to the uninsured motorist provisions of their policy.[2]  The Garrisons' policy with State Farm covered "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle."  The policy defined "bodily injury" as "bodily injury to a person and sickness, disease, or death that results from it."  The uninsured motorist coverage of the policy included a $100,000 limit for "Each Person" and a $300,000 limit for "Each Accident."[3]

As the litigation progressed, the Garrisons settled their wrongful death claim against Andy Bickford for $25,000, plus $25,000 for the negligent infliction of emotional distress claim.[4]  The Garrisons also settled their wrongful death claim with State Farm for $75,000, which State Farm asserted was the amount remaining under the "Each Person" limit of the policy.  However, State Farm refused to pay damages for the Garrisons' emotional distress claim on the basis that emotional harm was not a "bodily injury" as defined in the policy.  State Farm also claimed that because the Garrisons' emotional distress was caused by their witnessing the deceased's injuries, their claims were included in the "Each Person" limit of liability encompassing the deceased's injuries.  Pursuant to the partial settlement with State Farm, the Garrisons dismissed their wrongful death claim, but continued to press their claim

---

[2] Although State Farm was not a named party in the original or amended complaints,

[a]ny insured intending to rely on the [uninsured motorist] coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though the insurance company were a party defendant.  The company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name.

Tenn. Code Ann. § 56-7-1206(a) (2008).

[3] The policy provided, in part:

The limit shown under 'Each Person' is the most we will pay for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insureds as a result of that bodily injury.  The limit shown under 'Each Accident' is the most we will pay, subject to the limit for 'Each Person,' for all damages resulting from bodily injury to two or more insureds injured in the same accident.

[4] The record does not reveal the disposition of the Garrisons' claims against the owner of the car, Rita Bickford.  Neither she nor Andy Bickford are parties to this appeal.

3

for negligent infliction of emotional distress, arguing that the policy provided coverage for mental injuries.

State Farm filed a motion for summary judgment, arguing that mental injuries were not covered under the policy and, in any event, its payment of $75,000 to the Garrisons exhausted the "Each Person" limit of the policy. The trial court denied the motion. State Farm then filed a motion to alter or amend and a supplemental motion for summary judgment. The trial court denied these motions as well, but granted an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. In ruling in favor of coverage, the trial court found that the "bodily injury" provision of the uninsured motorist statute, Tennessee Code Annotated section 56-7-1201, was broader than the definition of "bodily injury" contained in the policy. Accordingly, the trial court found that the policy provided, by operation of law, coverage for the Garrisons' emotional distress claim.

The Court of Appeals determined that the Garrisons' mental injury claim stemmed from the bodily injuries to the deceased and, therefore, fell within the liability limitations contained in the "Each Person" provision of the policy. Garrison v. Bickford, No. E2010-02008-COA-R9-CV, 2011 WL 3241869, at *10 (Tenn. Ct. App. July 29, 2011). The Court of Appeals concluded that because the $100,000 coverage the policy afforded under the "Each Person" limit had been exhausted by virtue of the Garrisons' $25,000 settlement with Andy Bickford and the $75,000 settlement with State Farm, there was no further coverage available to pay the Garrisons' emotional distress claim. Id.

We granted the Garrisons' application for permission to appeal to determine whether "bodily injury" as defined in the policy includes mental injuries standing alone. For the reasons explained below, we conclude that it does not.

**Analysis**

I.

Our analysis of this case is guided by several well-established principles. First, Tennessee law is clear that questions regarding the extent of insurance coverage present issues of law involving the interpretation of contractual language. Clark v. Sputniks, LLC, 368 S.W.3d 431, 436 (Tenn. 2012); Maggart v. Almany Realtors, Inc., 259 S.W.3d 700, 703 (Tenn. 2008). Likewise, questions regarding the interpretation of a statute involve issues of law. In re Estate of Trigg, 368 S.W.3d 483, 490 (Tenn. 2012). This case involves the construction of both an insurance contract and a statute, Tennessee Code Annotated section 56-7-1201, and therefore our standard of review is de novo with no presumption of

4

correctness afforded to the conclusions reached by the courts below. U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co., 277 S.W.3d 381, 386 (Tenn. 2009).

When interpreting a statute, courts "must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning." U.S. Bank, 277 S.W.3d at 386. Our task is to examine the text of the statute and, if the language used is unambiguous, we simply apply the plain meaning of the words used in the statute. Nye v. Bayer Cropscience, Inc., 347 S.W.3d 686, 694 (Tenn. 2011); U.S. Bank, 277 S.W.3d at 386. As we recently observed, courts "must (1) give these words their natural and ordinary meaning, (2) consider them in the context of the entire statute, and (3) presume that the General Assembly intended to give each of these words its full effect." In re Estate of Trigg, 368 S.W.3d at 490. Every word in a statute is presumed to have meaning and purpose. Nye, 347 S.W.3d at 694; Highwoods Props., Inc. v. City of Memphis, 297 S.W.3d 695, 701 (Tenn. 2009). If, after examining the text of the statute, it becomes clear the statute is ambiguous, "we may reference the broader statutory scheme, the history of the legislation, or other sources to discern its meaning." Highwoods Props., 297 S.W.3d at 701; see also Mills v. Fulmarque, Inc., 360 S.W.3d 362, 368 (Tenn. 2012) ("When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme."). "However, these non-codified external sources cannot provide a basis for departing from clear codified statutory provisions." Mills, 360 S.W.3d at 368 (internal quotation marks omitted).

Equally well-established is the principle that "[i]nsurance policies are, at their core, contracts." Allstate Ins. Co. v. Tarrant, 363 S.W.3d 508, 527 (Tenn. 2012) (Koch, J., dissenting). As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract. Am. Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 814 (Tenn. 2000). Thus, the terms of an insurance policy "'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" Clark, 368 S.W.3d at 441 (quoting U.S. Bank, 277 S.W.3d at 386-87). The policy should be construed "as a whole in a reasonable and logical manner," Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998), and the language in dispute should be examined in the context of the entire agreement, Cocke Cty Bd. of Highway Comm'rs. v. Newport Utils. Bd., 690 S.W.2d 231, 237 (Tenn. 1985).

In addition, contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls. Tata v. Nichols, 848 S.W.2d 649, 650 (Tenn. 1993); VanBebber v. Roach, 252 S.W.3d 279, 284 (Tenn. Ct. App. 2007). However, a "strained

construction may not be placed on the language used to find ambiguity where none exists." Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975).

## II.

At the outset, it is important to put this appeal in its proper analytical context. First, it is undisputed that the Garrisons, as well as the decedent, were insureds under State Farm's policy. Likewise, there is no dispute that Michael Garrison sustained "bodily injury" in the accident resulting in his death. Nor is there any question, for purposes of this appeal, that the Garrisons were entitled to pursue negligent infliction of emotional distress claims against Andy Bickford, the driver of the vehicle that struck the deceased. Thus, this is not a case that requires us to address the parameters of the tort of negligent infliction of emotional distress as we have done a number of times before.[5]

Rather, the crux of this appeal is whether, as a matter of insurance and contract law, the Garrisons' mental injuries constitute "bodily injury" under the policy. A related, but separate question, is whether the Garrisons' claims are included in the deceased's "Each Person" limit on liability, as opposed to the Garrisons having their own distinct limits. State Farm maintains that the Garrisons' mental injuries do not constitute "bodily injury" under the

---

[5] See, e.g., Rogers v. Louisville Land Co., 367 S.W.3d 196, 206 (Tenn. 2012) ("The elements of a claim for negligent infliction of emotional distress include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation."); Eskin v. Bartee, 262 S.W.3d 727, 739-40 (Tenn. 2008) (a plaintiff who does not witness the injury-producing event may recover for negligent infliction of emotional distress if he or she proves (1) the actual or apparent death or serious physical injury of another caused by the negligence of the defendant, (2) the existence of a close personal relationship between the plaintiff and the deceased or injured person, (3) the plaintiff's observation of the actual or apparent death or serious physical injury at the scene of the accident before the scene is materially altered, and (4) the resulting serious or severe emotional injury to the plaintiff caused by the observation of the death or injury); Lourcey v. Estate of Scarlett, 146 S.W.3d 48, 53-54 (Tenn. 2004) (a plaintiff who witnesses the injury producing event may recover damages without establishing a close relationship with the victim of the tort); Ramsey v. Beavers, 931 S.W.2d 527, 532 (Tenn. 1996) (recovery for negligent infliction of emotional distress is limited to "serious or severe emotional injuries"); Camper v. Minor, 915 S.W.2d 437, 446 (Tenn. 1996) (a claim for negligent infliction of emotional distress requires evidence of a "severe" or "serious" emotional injury that "a reasonable person, normally constituted, would be unable to adequately cope with").

policy and, even if they did, their claim is not compensable because the "Each Person" limit of $100,000 was already met by the $75,000 payment for their wrongful death claim.[6]

The Garrisons respond that, according to the policy, the "Each Person" limit of $100,000 applies to "damages resulting from bodily injury to any one insured." Consequently, they assert that they each have their own $100,000 limit given that they suffered an injury distinct from the deceased's injuries. Further, they maintain that the definition of "bodily injury" in the policy is broad enough to encompass emotional harm and, even if it is not, the uninsured motorist statute, Tennessee Code Annotated section 56-7-1201, is broad enough to include emotional injuries. As such, they assert that the statute supersedes the more restrictive policy language.

The legislature has established the minimum standard of protection acceptable for uninsured motorist coverage in Tennessee as follows:

> Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage, subject to provisions filed with and approved by the commissioner, for the protection of persons insured under the policy who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles *because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease*.

---

[6] According to the parties' briefs, they agree that the "Each Person" limit of $100,000 in the policy was reduced by the $25,000 settlement between the Garrisons and Andy Bickford.

Tenn. Code Ann. § 56-7-1201(a) (2008) (emphasis added).[7]  This statute, enacted in 1967, was the result of "public concern over the increasing problem arising from property and personal injury damage inflicted by uninsured and financially irresponsible motorists." Shoffner v. State Farm Mut. Auto. Ins. Co., 494 S.W.2d 756, 758 (Tenn. 1972), overruled on other grounds by Auto. Mut. Ins. Co. v. Cummings, 519 S.W.2d 773 (Tenn. 1975).  Thus, the purpose of the uninsured motorist statute "is to provide, within fixed limits, some recompense to innocent persons who receive bodily injury or property damage through the conduct of an uninsured motorist who cannot respond in damages."  Id.

"The intent and purpose of the Uninsured Motorist Act is to provide protection by making the insurance carrier stand as the insurer of the uninsured motorist."  Stallcup v. Duncan, 684 S.W.2d 643, 646 (Tenn. Ct. App. 1984).  "Thus, the insured is allowed to purchase uninsured motorist coverage for the protection that he would have had if the alleged tortfeasor had assumed his own financial responsibility by purchasing liability insurance." Id.  In other words, "uninsured motorist insurance does not actually insure the uninsured motorist.  It insures the insured and assures him of some recovery when the other parties do not have liability insurance."  Thompson v. Parker, 606 S.W.2d 538, 540 (Tenn. Ct. App. 1980).  In short, the  purpose of section 56-7-1201(a) is to protect those who purchase motor vehicle liability insurance from those who do not.

The statutory language at the core of this case is "bodily injury, sickness or disease, including death."  Tenn. Code Ann. § 56-7-1201(a).  The policy issued to the Garrisons by State Farm provides coverage for "bodily injury to a person and sickness, disease, or death that results from it."  Because the policy cannot provide less coverage than that required by the statute, State Farm asserts that the words "injury, sickness or disease" as used in section

_____

[7] We note that the language appearing in the most recent 2008 Tennessee Code Annotated replacement volume ("because of bodily injury, sickness or disease, including death, *resulting from injury, sickness or disease*"), Tenn. Code Ann. § 56-7-1201(a) (2008) (emphasis added), does not appear in the most recent amendments to the statute in 1999.  The Tennessee Code Annotated replacement volume for 2000 includes the phrase "because of bodily injury, sickness or disease, including death, *resulting therefrom*."  Tenn. Code Ann. § 56-7-1201(a) (2000) (emphasis added). The Code Commission, rather than the General Assembly, apparently made this change in language pursuant to Tennessee Code Annotated section 1-1-108(a), which states that the Commission "shall not alter the sense, meaning or effect of any act of the general assembly," but permits the Commission "to make other stylistic, nonsubstantive changes."  We assume that the Commission's replacement of "resulting therefrom" with "resulting from injury, sickness or disease" was intended to be nonsubstantive and stylistic.  The matter would be much less clear, however, were it not for section 56-7-1202(a)(1), discussed later in this opinion.  As this discussion highlights, the Code Commission should exercise great care in altering the text of a statute.

56-7-1201(a) are restricted by the word "bodily," and that the plain meaning of "bodily injury" excludes an emotional or mental injury in both the statute and the policy. State Farm also points to general provisions governing motor vehicle liability policies which require coverage only for "bodily injury and death or property damage, or both." Tenn. Code Ann. § 55-12-122(c) (2008) ("A motor vehicle liability policy shall . . . contain an agreement or endorsement that insurance is provided . . . with respect to bodily injury and death or property damage, or both . . . .").

The Garrisons respond that if the legislature had intended to exclude mental injury claims from the reach of uninsured motorist coverage, it would have omitted "sickness or disease" from section 56-7-1201(a). They further maintain that even if the term "bodily" in the policy is read to modify "sickness, disease, or death," the word "bodily" in the statute modifies only "injury," not "sickness or disease." Consequently, the Garrisons assert that the policy definition of "bodily injury" is more restrictive than the coverage mandated by the uninsured motorist statute. As such, they argue that the language of section 56-7-1201(a) supersedes the policy definition of "bodily injury" and becomes part of the policy.[8] See Christenberry v. Tipton, 160 S.W.3d 487, 492 (Tenn. 2005) ("[I]f the terms of an automobile insurance policy fail to comport with statutory requirements, then the statute takes precedence, supersedes the conflicting policy provisions, and in effect becomes part of the insurance policy itself.").

Although the meaning of "bodily injury" for purposes of uninsured motorist coverage is an issue of first impression in Tennessee, there has been no shortage of litigation in other jurisdictions addressing this issue. The majority of courts facing the question in various contexts have concluded that "bodily injury" does not include mental or emotional harm absent a physical injury to the insured. See, e.g., Nance v. Phoenix Ins. Co., 118 F. App'x 640, 642 (3d Cir. 2004); Nat'l Fire Ins. Co. of Hartford v. NWM-Okla., LLC, 546 F. Supp. 2d 1238, 1246 (W.D. Okla. 2008); Home Ins. Co. v. Hartford Fire Ins. Co., 379 F. Supp. 2d 1282, 1289 (M.D. Ala. 2005); Mut. Serv. Cas. Ins. Co. v. Co-op Supply, Inc. of Dillon, Mont., 699 F. Supp. 1438, 1440 (D. Mont.1988); W. Am. Ins. Co. v. Bank of Isle of Wight, 673 F. Supp. 760, 765 (E.D. Va.1987); Rolette Cnty. v. W. Cas. & Sur. Co., 452 F. Supp. 125, 130 (D.N.D. 1978); Nat'l Cas. Co. v. Great Sw. Fire Ins. Co., 833 P.2d 741, 746 (Colo. 1992); Galgano v. Metro. Prop. & Cas. Ins. Co., 838 A.2d 993, 999 (Conn. 2004); Cotton States Mut. Ins. Co. v. Crosby, 260 S.E.2d 860, 862-63 (Ga. 1979); SCR Med. Transp. Servs., Inc. v.

---

[8] Because the policy language in this case favors State Farm, we agree with the Garrisons that section 56-7-1201(a) must be examined to determine if the statute requires greater coverage than the language of the policy provides.

Browne, 781 N.E.2d 564, 571 (Ill. App. Ct. 2002); Armstrong v. Federated Mut. Ins. Co., 785 N.E.2d 284, 292-93 (Ind. Ct. App. 2003); Allstate Ins. Co. v. Diamant, 518 N.E.2d 1154, 1156 (Mass. 1988); Greenman v. Mich. Mut. Ins. Co., 433 N.W.2d 346, 348-49 (Mich. Ct. App. 1988); Garvis v. Emp'rs Mut. Cas. Co., 497 N.W.2d 254, 257-58 (Minn. 1993); Citizens Ins. Co. of Am. v. Leiendecker, 962 S.W.2d 446, 454 (Mo. Ct. App. 1998); Farm Bureau Ins. Co. of Neb. v. Martinsen, 659 N.W.2d 823, 828-29 (Neb. 2003); David v. Nationwide Mut. Ins. Co., 665 N.E.2d 1171, 1173 (Ohio Ct. App. 1995); Mellow v. Med. Malpractice Joint Underwriting Ass'n, 567 A.2d 367, 368 (R.I. 1989); Daley v. Allstate Ins. Co., 958 P.2d 990, 998 (Wash. 1998); Tackett v. Am. Motorists Ins. Co, 584 S.E.2d 158, 166 (W. Va. 2003).

The Washington Supreme Court's decision in Daley is representative of many of the cases adopting the majority view. In Daley, the insured sought to recover for negligent infliction of emotional distress stemming from his witnessing another person's fatal injuries. 958 P.2d at 991-92. The insured's uninsured motorist policy defined "bodily injury" as "bodily injury, sickness, disease or death." Id. at 993. In concluding that the insured was not entitled to recover for emotional distress unrelated to a physical injury, the Washington court observed that the "clear majority of states . . . have held that the term 'bodily injury' does not include damages for purely emotional injuries." Id. at 993-94. The court explained that "'in the context of purely emotional injuries, without physical manifestations, the phrase 'bodily injury' is not ambiguous. Its ordinary meaning connotes a physical problem.'" Id. at 994 (quoting SL Indus., Inc. v. Am. Motorists Ins. Co., 607 A.2d 1266, 1274 (N.J. 1992)). The court further observed that in interpreting the common policy definition of "bodily injury" as "bodily injury, sickness, or disease," courts have found that the word "bodily" modifies the terms "sickness or disease," so that the policy "would then read 'bodily injury, bodily sickness, [or] bodily disease.'" Id. at 995. Following this line of analysis, the "overwhelming majority of courts interpret the phrase 'bodily injury' to include claims for physical injury and to exclude claims for purely nonphysical or emotional harm." Id. at 994.

Similarly, in Johnson v. American Family Insurance, 827 N.E.2d 403, 404 (Ohio Ct. App. 2005), an insured sought compensation from her uninsured motorist carrier for emotional distress stemming from the death of her sister in a car accident. Noting that the policy defined "bodily injury" as "bodily injury to or sickness, disease or death of any person," the Ohio court observed that "bodily injury" is "commonly and ordinarily used to designate an injury caused by external violence." Id. at 407 (internal quotation marks omitted). The court concluded that the "policy clearly states, to be covered . . . the insured[] must have sustained 'bodily injury' caused by an accident . . . . Although she certainly sustained emotional injury, [the insured] was not involved in and did not receive bodily injuries from the accident that caused the death of her sister." Id. Consequently, the insured's underinsured motorist "claims were effectively excluded from coverage by the policy language." Id.

While some cases, such as Daley, find no coverage on the basis that the term "bodily" modifies or restricts the words that follow, namely "sickness or disease", other cases place no significance on which words "bodily" modifies because "[n]either sickness nor disease arguably includes emotional distress." David, 665 N.E.2d at 1173. Therefore, "whether the word 'bodily' modifies 'sickness' or 'disease' is irrelevant." Id. Or, as one court has observed, "[t]hese words cannot fairly be said to have misled anyone," and they "need no explanation." Cotton States Mut. Ins. Co., 260 S.E.2d at 862.

Still other cases focus on typical dictionary definitions to find the meaning of "bodily injury." For instance, in concluding that "the common meaning of the phrase 'bodily harm, sickness or disease' as used to define 'bodily injury' is not ambiguous," Citizens Ins. Co. of Am., 962 S.W.2d at 454, one court has observed that "[i]n dictionary definitions, 'bodily' is equated with 'physical' . . . as contrasted with 'mental.'" Id. at 453. Thus, "'bodily injury' . . . refers to physical conditions of the body and excludes mental suffering or emotional distress." Id. at 454. Moreover, "in insurance law 'bodily injury' is considered to be a narrower concept than 'personal injury' which covers mental or emotional injury." Id. at 453.

As this discussion illustrates, most courts "conclusively exclud[e] emotional distress from the insurance definition [of] 'bodily injury, sickness or disease.'" David, 665 N.E.2d at 1173. While these cases represent the clear majority view, other cases considering the issue have been decided in favor of coverage. For example, in Evans v. Farmers Insurance Exchange, 34 P.3d 284, 286-87 (Wyo. 2001), the parents of a child seriously injured in an accident sought to recover damages for their emotional distress under the uninsured motorist provisions of their policy, which defined "bodily injury" as "bodily harm to or sickness, disease or death of any person." The insurer agreed that the parents suffered emotional harm in witnessing their child's accident, but refused to cover purely emotional injury unaccompanied by any kind of physical harm. Id. at 284-85. While acknowledging that "[a] common sense reading of the term 'bodily injury,' without more, may indeed connote physical harm rather than emotional harm," id. at 286, the Wyoming court concluded that "bodily injury" did not modify the terms "sickness" or "disease," and emotional injuries were neither expressly included or excluded from commonly understood definitions of those words. Id. at 287. The court thus resolved this "ambiguity" in favor of coverage. Id.

Similarly, in Ryder v. USAA General Indemnity Co., 938 A.2d 4, 5 (Me. 2007), the mother of a young child sought to recover for negligent infliction of emotional distress after witnessing the child being fatally struck by a car. The mother sought to recover under the uninsured motorist provisions of her policy, which defined "bodily injury" as "bodily harm, sickness, disease or death." Id. at 6. Maine's high court noted that most jurisdictions considering the matter have held that the phrase "bodily injury, when either undefined or defined as 'bodily' followed by the noun series 'injury [or harm], sickness or disease' is

11

unambiguous and encompasses only physical harm." Id. at 7 (brackets in original). The court found the definition ambiguous, however, because it was unclear whether "bodily" was intended to modify all the nouns that followed it in the policy. Id. at 8. The court further explained that because the definition of "bodily injury" included sickness or disease, coverage extended to nonphysical harm because "serious emotional distress a person experiences from having witnessed an accident may or may not also qualify as a diagnosable sickness or disease." Id. at 9; see also Pekin Ins. Co. v. Hugh, 501 N.W.2d 508, 512 (Iowa 1993) (holding that emotional distress arising from "a bystander claim is a bodily injury for purposes of insurance coverage" because "[a]ny attempt to distinguish between 'physical' and 'psychological' injuries just clouds the issue"); Crabtree v. State Farm Ins. Co., 632 So.2d 736, 744 (La. 1994) (finding ambiguous a policy that defined "bodily injury" as "bodily injury to a person, and sickness, disease or death which results from it"); Lanigan v. Snowden, 938 S.W.2d 330, 332 (Mo. Ct. App. 1997) (finding the phrase "bodily injury, sickness or disease" ambiguous because it "can be construed in a way that the adjective 'bodily' modifies all three nouns, or it can be construed with equal plausibility that 'bodily' modifies only injury"); Lavanant v. Gen. Accident Ins. Co. of Am., 595 N.E.2d 819, 822-23 (N.Y. 1992) (concluding that "bodily injury," defined as "bodily injury, sickness or disease," is ambiguous).[9]

### III.

After considering the approaches of other jurisdictions, we are persuaded that the phrase "bodily injury," as used in both section 56-7-1201(a) and the policy before us, does not include damages for a mental or emotional injury by itself. The commonly understood meaning of the words "bodily injury to a person and sickness, disease, or death that results from it" as used in the policy, or the words *"bodily injury, sickness or disease, including death"* as used in the statute, are unambiguous.[10] These words, when used to define "bodily

---

[9] The trial court in the present case relied upon State Farm Mutual Automobile Insurance Co. v. Jakupko, 881 N.E.2d 654, 656 (Ind. 2008), which involved a policy defining "bodily injury" as "bodily injury to a *person* and sickness, disease or death which results from it." The Jakupko court determined that this definition included emotional distress. Id. at 658. Other Indiana decisions, however, make clear that Jakupko involved plaintiffs who had been physically impacted by the accident that resulted in the emotional harm for which a recovery was sought. See, e.g., Bush v. State Farm Mut. Auto. Ins. Co., 905 N.E.2d 1003, 1005 (Ind. 2009); State Farm Mut. Auto. Ins. Co. v. D.L.B. ex rel. Brake, 881 N.E.2d 665, 666 (Ind. 2008). Thus, Jakupko is distinguishable from this case.

[10] Even if section 56-7-1201(a) was determined to be ambiguous, we note that section 56-7-1202(a)(1) defines an "uninsured motor vehicle" for purposes of uninsured motorist coverage as "a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury, death, or damage to property of an insured." This definition does not include mental injuries and, if the two

12

injury," refer to physical, not emotional, conditions of the body. See Webster's Third New International Dictionary 245 (3d ed. 1976) (equating "bodily" with "physical," as "contrast[ed] with mental"); Black's Law Dictionary 801 (8th ed. 2004) (defining "bodily injury" as "[p]hysical damage to a person's body"). Policy language may not be construed to include different coverage, namely damages for emotional harm standing alone, when the plain and ordinary terms used indicate otherwise. Stated differently, we "cannot under the guise of construction make a new and different contract for the parties," Memphis Furniture Mfg. Co. v. Am. Cas. Co., 480 S.W.2d 531, 533 (Tenn. 1972), and a "strained construction may not be placed on the language used to find ambiguity where none exists," Farmers-Peoples Bank, 519 S.W.2d at 805. Simply put, the parties' policy must be enforced as written.

Our conclusion is also in accord with the majority of other jurisdictions that have addressed the question. As one court has observed, "the overwhelming majority of jurisdictions which have considered the issue hold that 'bodily injury' standing alone or defined in a policy as 'bodily injury [or harm], sickness or disease' is unambiguous and encompasses only physical harm." Citizens Ins. Co. of Am., 962 S.W.2d at 452 (brackets in original). The majority view, which we adopt, is consistent with older, analogous Tennessee cases. For example, in Guardian Life Insurance Co. of America v. Richardson, 129 S.W.2d 1107, 1115 (Tenn. Ct. App. 1939), the Court of Appeals, in construing the meaning of "bodily injury or disease" in a life insurance policy, concluded that "the word 'disease' is 'restricted' by the word 'bodily'; and grammatically, the word 'bodily' modifies 'disease,' as well as 'injury'; and manifestly it was inserted for the purpose of excluding *mental disease*." See also Provident Life & Accident Ins. Co. v. Campbell, 79 S.W.2d 292, 304 (Tenn. Ct. App. 1934) ("[A] purely 'mental shock,' due to excitement or mental disturbance . . . is not a bodily injury."). In a more recent case, the Court of Appeals concluded that "bodily injury," defined in a commercial general liability policy as "bodily injury, sickness or disease," did not include "embarrassment, humiliation, mental anguish, [and] emotional pain and suffering." Am. Indem. Co. v. Foy Trailer Rentals, Inc., W2000-00397-COA-R3-CV, 2000 WL 1839131, at *3-4 (Tenn. Ct. App. Nov. 28, 2000). Although these cases were not decided in the context of uninsured motorist coverage, they are nonetheless analogous in principle.

The result we have reached in this case is also consistent with the nature of the tort of negligent infliction of emotional distress itself. At one time, some form of physical harm was required to successfully pursue such a claim. See Camper, 915 S.W.2d at 443-46. That is no longer the case, however, as emotional harm alone forms the basis of the tort, apart from a claim for personal injury. See Flax v. DaimlerChrysler Corp., 272 S.W.3d 521, 530 (Tenn.

statutes are construed together, it is apparent that the legislature intended to provide coverage for physical injuries, not mental injuries. See Graham v. Caples, 325 S.W.3d 578, 582-83 (Tenn. 2010) (observing that statutes relating to the same subject matter should be construed together).

13

2008).[11]  Indeed, it is now generally accepted that "[e]motional harm is distinct from bodily harm and means harm to a person's emotional tranquility." See Restatement (Third) of Torts § 4 cmt. a (2010).  On the other hand, physical or bodily harm "means the physical impairment of the human body," namely, "physical injury, illness, disease, impairment of bodily function, and death." Id. at § 4.  This definition "is meant to preserve the ordinary distinction between bodily harm and emotional harm." Id. at cmt. b.  Thus, "[t]he cases permitting recovery for emotional harm suffered by bystanders who witness physical injury to someone else provide protection to the interest in emotional tranquility distinct from protection against bodily harm." Id. at reporters' note (cmt. d).  Our decision today is in accord with these established principles.  A contrary decision would blur the distinction between physical and mental injuries and merely serve to confuse matters.

In sum, a bystander claim for negligent infliction of emotional distress, such as that asserted by the Garrisons, is not a claim for bodily harm.  Accordingly, we conclude that in the context of purely emotional injuries, the phrase "bodily injury," as defined in the policy before us, is unambiguous.  Its ordinary meaning connotes a physical injury.  Thus, we hold that, as applied to this case, "bodily injury" does not include damages for emotional harm alone.  We further conclude that the definition of "bodily injury" in the policy does not conflict with the uninsured motorist statute, section 56-7-1201(a).  Consequently, we reject the Garrisons' argument that the statute supersedes the policy language.  In light of our conclusion that there is no coverage for the Garrisons' emotional distress claim, we need not decide whether the "Each Person" provision in the policy limits their recovery.

---

[11] In Flax, we observed:

> [The] emotional injuries alleged by [the plaintiff] are not parasitic to the minor [physical] injuries she sustained in the accident but rather are the result of witnessing the death of her child.  Even if [the plaintiff] had chosen to bring a claim for her minor physical injuries, her NIED claim would remain a 'stand-alone' claim because the emotional injuries sustained from witnessing the death of her child are completely unrelated to any physical injuries she may have sustained.

Flax, 272 S.W.3d at 530.

**Conclusion**

For the foregoing reasons, the judgment of the Court of Appeals is affirmed. The costs of this appeal are taxed to the Garrisons and their surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, CHIEF JUSTICE