
IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 21, 2016 Session

## CRAIG DILLON v. TENNESSEE FARMERS MUTUAL INSURANCE COMPANY

**Appeal from the Circuit Court for McMinn County**
**No. 2015-CV-204    J. Michael Sharp, Judge**

_____

**No. E2016-01080-COA-R3-CV**

_____

A policyholder brought suit to recover under personal fire and extended coverage policy for damage caused when burglars broke into his property and removed copper wiring, causing considerable damage.  The trial court determined that the majority of the loss was excluded from coverage because it was caused by theft and awarded policyholder the amount previously tendered under the vandalism coverage, less his deductible. Policyholder appeals, contending that the plain language of the policy provides coverage for the damage caused by burglars.  Holding that the damages covered under the policy are not limited to damages caused by vandalism, we reverse the judgment and remand the case for reconsideration of the amount of damages due the policyholder.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

D. Mitchell Bryant, Athens, Tennessee, for the appellant, Craig Dillon.

H. Chris Trew, Athens, Tennessee, for the appellee, Tennessee Farmers Mutual Insurance Company.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Craig Dillon purchased a home that had been previously damaged by fire, with the intention of renovating it.  The property was not to be occupied by Mr. Dillon during the period of renovation, and he purchased a personal fire and extended coverage insurance

policy for the property from Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"), which included coverage for vandalism or malicious mischief.

In October 2013, Mr. Dillon discovered that the home had been broken into. The intruders damaged the doors of the home; cut through sheet rock; damaged the circuit and junction boxes; pulled out wiring from the upper and lower levels of the home and the garage; and removed the underground wiring running between the home and the garage. Mr. Dillon notified Tennessee Farmers of the incident, made a claim on his policy, and submitted cost estimates that included the cost to repair the interior and to rewire the house. Tennessee Farmers declined to pay Mr. Dillon the total amount he claimed and tendered a check in the amount of $6,465.30, which represented the amount Tennessee Farmers believed was payable under the vandalism coverage.

Mr. Dillon filed a civil warrant in McMinn County General Sessions Court; Tennessee Farmers filed an answer, admitting that it owed Mr. Dillon for any loss as a result of vandalism and denying liability for damages caused by theft. A trial was held on June 2, 2015, and the court awarded Mr. Dillon $18,489.37 in damages. Tennessee Farmers appealed to the Circuit Court, and trial was held on March 31, 2016. On April 20 the court entered an order holding that, because the claimed loss was caused by theft, Mr. Dillon was only entitled to the funds which had been tendered, minus his deductible. Mr. Dillon raises one issue on appeal: whether the trial court erred in finding that his loss was excluded from coverage under the terms of his insurance policy.

## II. STANDARD OF REVIEW

"[Q]uestions regarding the extent of insurance coverage present issues of law involving the interpretation of contractual language." *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012) (citing *Clark v. Sputniks*, LLC, 368 S.W.3d 431, 436 (Tenn. 2012); *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008)). As a general rule, we apply the same rules of construction when interpreting insurance contracts as are applicable to other types of contracts. *Fisher v. Revell*, 343 S.W.3d 776, 779 (Tenn. Ct. App. 2009) (citing *Philips v. United Servs. Auto. Ass'n*, 146 S.W.3d 629, 633 (Tenn. Ct. App. 2004)). The Tennessee Supreme Court set forth the court's role in interpreting contracts in *Maggart*:

> "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." If the language of the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. In such a case, the contract is interpreted according to its plain terms as written, and the language used is taken in its "plain, ordinary, and popular sense." The interpretation should be one that gives reasonable meaning to all of the

provisions of the agreement, without rendering portions of it neutralized or without effect. The entire written agreement must be considered.

259 S.W.3d at 703-04 (internal citations omitted).

Because the interpretation of a contract is a question of law, the trial court's interpretation is accorded no presumption of correctness on appeal. *Stonebridge Life Ins. Co. v. Horne*, No. W2012-00515-COA-R3-CV, 2012 WL 5870386, at *3 (Tenn. Ct. App. Nov. 21, 2012) (citing *Guliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999); *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006); *Angus v. Western Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 200)). Accordingly, we must review the contractual language ourselves and reach our own conclusion as to its meaning and legal import. *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

### III. DISCUSSION

The parties agree that the resolution of this case involves interpretation of the section of the policy entitled "Perils We Insure Against." Under this section, nine "perils" that are covered by the policy are listed: (1) Fire or Lightening, (2) Windstorm or Hail, (3) Internal Explosion, (4) Sinkhole Collapse, (5) Riot or Civil Commotion, (6) Aircraft, (7) Vehicles, (8) Smoke, and (9) Vandalism or Malicious Mischief. The specific provision at issue is the "Vandalism or Malicious Mischief" declaration:

The following is added to the Perils We Insure Against if a premium is shown for Vandalism or Malicious Mischief in the Declarations.

9. Vandalism or Malicious Mischief

This peril does not apply to loss:
***
(b) by theft, burglary or larceny. But it does apply to damage to the covered building which is caused by burglars.

In the final order, the court made the following findings:

Mr. Dillon testified that in October 2013 the house was broken into by someone who broke in the front door of the main dwelling unit. This same person or persons also broke into the detached garage that is adjacent to the home. At the time of the break in, Mr. Dillon testified that all locks were in place and were functional. The individuals responsible for the break in intentionally and deliberately broke into the residence as well as the garage. Once the individuals were inside the dwelling or the garage, they cut into the sheet rock and they took out most of the wiring from the house and

3

from the garage, as well as some of the underground wiring running between the house and the garage that they could pull up out of the ground.

***

This court finds that the majority of this loss to Mr. Dillon was caused by the burglars['] theft of the wiring. The thieves' main purpose in breaking in appears to have been to steal the copper wiring and that appears to have been the main reason the burglars broke into Mr. Dillon's property.

The court concluded:

The damage to the building that was caused by the vandalism or malicious mischief is not an issue in this case in that Tennessee Farmers has offered to pay and previously submitted a check. Ultimately, the court finds that the majority of this claim occurred because the thief or thieves wanted to get to the copper wiring and did in fact steal the copper wiring. Based upon the court's findings set out herein, the court finds that Mr. Dillon is entitled to his claim for damages caused by the vandalism and/or malicious mischief less the amount of his actual deductible.

Mr. Dillon contends that the plain language of paragraph 9(b) covers his loss because the damage was caused when the burglars took the copper wiring. Tennessee Farmers contends that taking of the copper wiring was a theft and not covered, and that its payment of $6,465.30, the amount it determined to be caused by vandalism, satisfied its obligations under the policy.

Consistent with the instruction of *Maggart*, *supra.*, and giving this language a reasonable interpretation in light of the other provisions, we conclude that, while the cost of the copper wire is not recoverable, the damage to the building caused by the burglars is covered, and not only the damage that Tennessee Farmers concluded was caused by vandalism.

Paragraph 9 includes vandalism and malicious mischief among the covered perils; subparagraph (b) states that theft, burglary, or larceny are not included in the coverage, but that damage caused by burglars is. The trial court found that the burglary was the main reason that Mr. Dillon's property was broken into and that the taking of the copper wire was a theft; Tennessee Farmer's does not contest these findings. The policy does not define "vandalism" or "malicious mischief," and there is no testimony or other evidence to establish how Tennessee Farmers classified the damage as vandalism. To the extent there may be ambiguity in the policy language or, as the trial court held, "the policy may be inartfully worded," we are required to adopt the interpretation that favors the insured. *See Standard Fire Ins. Co. v. Chester-O'Donley & Assoc., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998) ("[A]mbiguous language will be construed against the insurer

4

and in favor of the insured.")  The construction that favors Mr. Dillon would be to construe the language broadly, as covering the damage "caused by burglars."

The court did not state the particular items that were included in the $6,465.30 tendered to Mr. Dillon, and in his testimony Gregory Watson, Tennessee Farmers' claims adjuster, did not specify the items that were determined to be "caused by vandalism." For his part, Mr. Dillon introduced the testimony of Kenny Ray Scroggins, an electrician who is superintendent of Presswood Electrical Service, who testified about damage to the house and provided an estimate of $17,762.00 to rewire the house; James Cucciarre, owner of Jimbob Contracting Company, who likewise testified about the damage and gave a room-by-room breakdown of costs of repair totaling $18,950.76; and a summation of damages totaling $27,526.38 prepared by Mr. Dillon's counsel.

The trial court did not enter a money judgment, but rather held that Mr. Dillon was entitled to the funds previously tendered, less the amount of his deductible.  The record is not clear as to the specific items covered by Tennessee Farmers' tender and the extent to which the items contained in the various estimates are attributable to the damage caused by the burglar; consequently, the case must be remanded for reconsideration.

IV. CONCLUSION

For the foregoing reasons, we reverse the holding of the trial court and remand the case for reconsideration of the damages to which Mr. Dillon is entitled consistent with this opinion and to make an award accordingly.

_____

RICHARD H. DINKINS, JUDGE

5