# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 6, 2016 Session

## AMERICAN HONDA MOTOR CO., INC. v. THE TENNESSEE MOTOR VEHICLE COMMISSION, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 15188II     Carol L. McCoy, Chancellor

_____

### No. M2016-00406-COA-R3-CV – Filed October 31, 2016

_____

American Honda wanted to establish a new motorcycle dealership in Kingsport, Tennessee and notified the current dealerships of this intent. Jim's Motorcycle, located in Johnson City, filed a notice of protest with the Tennessee Motor Vehicle Commission, and a hearing was held in accordance with Tenn. Code Ann. § 55-17-114(c)(20). The Commission determined that the Kingsport area was within the relevant market area of Jim's Motorcycle and ruled that American Honda was not authorized to establish a new dealership in Kingsport. American Honda appealed, and we affirm the Commission's ruling.

#### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

David A. Changas, Nashville, Tennessee; and Bill M. Donley, *Pro Hac Vice*, and J. Keith Russell, *Pro Hac Vice*, Houston, Texas, for the appellant, American Honda Motor Co., Inc.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Mary Ellen Knack, Senior Counsel, for the appellee, Tennessee Motor Vehicle Commission.

James W. Cameron, III, and Patrick W. Merkel, Brentwood, Tennessee; and James D. Culp, Johnson City, Tennessee, for the appellee, Jim's Motorcycle Sales of Johnson City, Inc.

# OPINION

## I. Factual and Procedural Background

This case concerns the interpretation of Tenn. Code Ann. § 55-17-114(c)(20) as it applies to the denial by the Tennessee Motor Vehicle Commission (the "Commission") of a license for a new motorcycle dealership in Kingsport, Tennessee. The portion of the statute at issue provides as follows:

> [T]he commission may deny an application for a license, or revoke or suspend the license of a manufacturer, distributor, distributor branch, factory branch or officer, agent or other representative thereof who has:
>
> . . . .
>
> (20) Granted a competitive franchise in the relevant market area previously granted to another motor vehicle dealer. "Relevant market area," as used in this subdivision (c)(20), means that area as described or defined in the then existing franchise or dealership of any dealer or dealers; provided, that if the manufacturer wishes to grant a franchise to an independent dealer, or to grant an interest in a new dealership to an independent person in a bona fide relationship in which the person has made a sufficient investment subject to loss in the dealership, and can reasonably expect to acquire full ownership of the dealership on reasonable terms and conditions, then the manufacturer shall give written notice to the existing dealer or dealers in the area, and the matter shall be submitted to the commission for final and binding action under the principles herein prescribed for a determination of the relevant market area, the adequacy of the servicing of the area by the existing dealer or dealers and the propriety of the granting of additional dealerships. The complaint, whether filed by an existing dealer or upon motion of the commission, shall be filed within thirty (30) days of the receipt by affected dealers of notice as required herein, and if no protests are filed, the manufacturer may proceed to grant the additional franchise.

Tenn. Code Ann. § 55-17-114(c)(20).

In 2013, American Honda Motor Co., Inc. ("American Honda"), was interested in establishing a new motorcycle dealership in Kingsport, Tennessee. By letter dated March 22, 2013, American Honda notified Kenneth W. Hayes and Kirk Hayes, the owners and operators of Jim's Motorcycle Sales of Johnson City, Inc. ("Jim's Motorcycle"), of American Honda's "intent to establish a new Honda Motorcycle, All Terrain Vehicle, Motor Scooter,

- 2 -

Personal Watercraft, and Multi-Purpose Utility dealership in the Kingsport, Tennessee market area." In the letter, American Honda informed Jim's Motorcycle that it "may be within the relevant market area of the Kingsport Dealership as defined by the Tennessee Manufacturer-Dealer statute" and that Jim's Motorcycle "may have the right to file a protest against the establishment of the Kingsport Dealership with the Tennessee Motor Vehicle Commission and have a hearing" as provided by Tenn. Code Ann. § 55-17-114(c)(20). Jim's Motorcycle responded by filing a formal protest with the Commission, asserting that the proposed new dealership would have an unfair competitive advantage and would disrupt the marketing base of the current dealers in the area.

The Commission initiated a contested case hearing once it received the formal protest from Jim's Motorcycle. American Honda filed a motion to dismiss the protest, arguing that Jim's Motorcycle lacked standing because (1) it was not previously granted the relevant market area to be assigned to the new dealership and (2) it was not situated in the relevant market area to be assigned to the new dealership.[1] The Commission denied American Honda's motion to dismiss in November 2013.

The following month, American Honda sent two more letters to Jim's Motorcycle dated December 13, 2013. In one letter, American Honda notified Jim's Motorcycle that its primary market area was going to be identified and defined. In the other letter, American Honda identified the primary market area it was assigning to Jim's Motorcycle and specified that "[t]his PMA will become effective immediately." The primary market area American Honda identified did not include Kingsport or any part of the State north or west of Interstate 81. The following month, American Honda filed a second motion asking the Commission to dismiss Jim's Motorcycle's protest because American Honda "has now designated the PMA for all of its Tennessee dealers" and the PMA for Jim's Motorcycle "does not include Kingsport." Again, the Commission denied American Honda's motion, noting that "[t]he parties had not defined the Relevant Market Area (RMA) at the time notice was filed in this matter," and concluding that there were disputes as to genuine issues of material fact that it had to resolve after a hearing on the merits.[2]

American Honda then sent Jim's Motorcycle a letter dated May 21, 2014, rescinding its letter from March 22, 2013, in which it had notified Jim's Motorcycle of American Honda's intent to establish a new dealership in Kingsport. On June 5, 2014, American Honda filed its fourth motion to dismiss, arguing that Jim's Motorcycle's protest was, by that

---

[1]When Jim's Motorcycle filed its protest, American Honda had not assigned a relevant market area to Jim's Motorcycle.

[2]The parties agree that the terms "primary market area" and "relevant market area" are interchangeable. Because the statute uses the term "relevant market area," we will use that term for the remainder of this opinion.

- 3 -

time, moot. According to American Honda, because it had granted Jim's Motorcycle a relevant market area that did not include Kingsport, Jim's Motorcycle was no longer entitled to notice of American Honda's intent to establish a new dealership there, and Jim's Motorcycle no longer had standing to file a protest with the Commission under the statute. The Commission denied American Honda's motion once more, ruling that the protest was not moot because there was an on-going controversy and need to adjudicate the parties' rights.

The Commission held a hearing on October 7, 8, and December 3, 2014. The Commission issued a Final Order dated January 12, 2015, in which it ruled that American Honda was not authorized to appoint a new motorcycle dealer in the Kingsport market area. The Commission made the following findings of fact:

1.  Jim's Motorcycle Sales of Johnson City, Inc. ("Jim's Motorcycle Sales") was founded in Johnson City, Tennessee in 1937 by James Hayes, Sr.

2.  Jim's Motorcycle Sales became a Honda motorcycle dealer in 1966.

3.  From 1966 until it closed in 2009, the Kingsport, Tennessee market area was served by a Honda motorcycle dealership known as Jim's Motorcycle Sales of Kingsport, Inc.

4.  Jim's Motorcycle Sales of Kingsport, Inc. was founded by James Hayes, Sr. who also founded Jim's Motorcycle Sales of Johnson City, Inc.

5.  The Honda motorcycle dealership in Bristol, Virginia is owned by Thomas Hayes, a member of the same Hayes family.

6.  The Tri-Cities region in upper east Tennessee consists of Kingsport, Bristol, Johnson City and the surrounding areas. It is a regional shopping area that is presently served by three Honda motorcycle dealerships which are located in Bristol, Virginia, Johnson City, Tennessee and Greeneville, Tennessee.

7.  In a letter dated March 22, 2013, American Honda Motor Co., Inc. ("Honda") notified Jim's Motorcycle Sales that it intended to establish a new "Honda Motorcycle, All Terrain Vehicle, Motor Scooter, Personal Watercraft, and Multipurpose Utility Vehicle dealership" in the Kingsport, Tennessee market area.

8.  Honda's letter of March 22, 2013, said "Jim's Motorcycle Sales, Inc. may be within the relevant market area of the Kingsport Dealership . . . you may have the right to file a protest against the establishment of the Kingsport

- 4 -

Dealership with the Tennessee Motor Vehicle Commission."

9. Jim's Motorcycle Sales filed a timely protest with the Tennessee Motor Vehicle Commission.

10. As of March 22, 2013, Honda had never formally designated relevant market areas for its motorcycle dealers.

11. By letter dated December 13, 2013, 8 months after the filing of the protest by Jim's Motorcycle Sales, Honda formally designated relevant market areas for its Tennessee motorcycle dealers.

12. The Primary Market Area designated for the Kingsport, Tennessee open point included geographic areas that had previously been served by Jim's Motorcycle Sales and other Honda motorcycle dealers.

13. There has been no Honda motorcycle dealer physically located in the city of Kingsport since Jim's Motorcycle Sales of Kingsport, Inc. closed in 2009.

14. Beginning in 2009, the Tri-Cities area and much of the United States was in a severe economic recession.

15. Between 2008 and 2009, the sales of motorcycles in the Tri-Cities area dropped by roughly 50%.

16. Motorcycle sales in the Tri-Cities area have not recovered to 2008 sales levels.

17. Mr. Jimmy Schofield is the proposed new dealer for the Kingsport market. He currently owns Greeneville Honda in Greeneville, Tennessee, a market contiguous to the Kingsport market.

18. Mr. Schofield has plans to build a new 14,500 square foot Honda powersports facility in Kingsport.

19. Honda will award special benefits to the proposed Kingsport dealer for the construction of a large new facility dedicated to the Honda brand only.

20. At present, in the Tri-Cities regional area, Honda has the same number of motorcycle dealers as its primary competitors: Harley-Davidson, Yamaha, and Kawasaki.

21. The location of the proposed new Kingsport dealership is within 20 air miles of much of the market area of Jim's Motorcycle Sales in Johnson City.

22. Honda's own records indicate that in 2012 it considered parts of Kingsport to be in the primary market area of Jim's Motorcycle Sales.

23. The Yamaha motorcycle dealership in Kingsport closed in the last few months.

24. There is only one motorcycle dealership of any brand left in Kingsport. It sells Kawasaki, Suzuki and Triumph brand motorcycles.

25. Honda prepared a PMA map sometime before May 2012 which indicated a dealer in the Kingsport PMA would be optimally located, in comparison to 6 other existing dealers, in Pound, Virginia, not in Kingsport, Tennessee.

26. When Honda assigned a PMA to Jim's Motorcycle Sales in December 2013 it removed areas shown on the 2012 Honda PMA Map in Kingsport from Jim's Motorcycle Sales' PMA.

27. The Commission believes that Honda considered Kingsport to be in the relevant market area for Jim's Motorcycle Sales before it was approached by Mr. Schofield to put a new facility in Kingsport.

28. The median household income for the Johnson City and Kingsport areas is below the average household income for the State of Tennessee as a whole and below the national average household income.

American Honda submitted testimony and a report from John Frith, whom it retained to perform a dealer network analysis regarding the proposed establishment of a dealership in Kingsport. The Commission made the following findings of fact with regard to Mr. Frith's testimony and report:

29. Mr. Frith's report includes sales numbers for products that are not subject to the jurisdiction of the Motor Vehicle Commission.

30. The effect of the inclusion of the sales of other products in his report is to make the Kingsport market appear to be performing worse and to make the "lost opportunity" seem greater.

31. Mr. Frith's report selects a standard he calls the "Tennessee Represented Standard" to compare sales performance of Honda products in Kingsport

where there is no dealer, only to areas in the State where there are dealers representing Honda. The Commission finds this practice to be misleading.

32. The national represented average referred to by Mr. Frith for motorcycles, ATV's and Scooters for 2014 through June shows a Honda market share of 20.82%.

33. The Tennessee represented average referred to by Mr. Frith for those same products shows a market share of 30.67%.

34. Comparing the national represented average to the Tennessee represented average shows that the standard used by Mr. Frith is approximately 32% greater than the national represented average.

35. In its Dealer Contact Reports, Honda publishes to its dealers the state average market penetration for each dealer's primary county using data supplied by the Motorcycle Industry Council, a recognized source of registration data.

36. The Honda Dealer Contact Report dated as of September 2012 for Jim's Motorcycle Sales shows the Tennessee average market share for Washington County, Tennessee where Jim's Motorcycle Sales is located to be a 16.5% market share for the sale of motorcycles. The Honda Dealer Contact Report dated as of May 2014 for Jim's Motorcycle Sales shows the Tennessee average market share for Washington County, Tennessee to be a 17.9% market share for the sale of motorcycles. In both cases Washington County outperforms the state average shown in these Dealer Contact Reports. The state average used by Honda in these dealer contact reports is significantly lower than the represented market shares used by Mr. Frith in his report.

37. Mr. Frith testified that the "Lost Opportunity" for motorcycle sales in the Kingsport area was only 8 units.

38. The Commission is not convinced there is sufficient additional sales opportunity for Honda motorcycles in the Kingsport area for a new dealer with a large facility to survive without taking significant sales away from other Honda motorcycle dealers in the area.

39. The opening of a new large Honda dealership in Kingsport will have an adverse impact on the Honda motorcycle business conducted at Jim's Motorcycle Sales in Johnson City.

- 7 -

40. The Kingsport market area is adequately served for motorcycle sales by Jim's Motorcycle Sales and by Honda motorcycle dealers located in adjoining market areas including Bristol, Virginia, and Greeneville, Tennessee.

41. Honda has failed to carry its burden of showing that the Kingsport area is not adequately served by existing Honda motorcycle dealers in the area.

The Commission's Conclusions of Law included the following:

1. The Commission only has jurisdiction over the sale of motor vehicles which are required to be titled and registered in this state.

2. The sale of products not subject to the jurisdiction of the Commission are not relevant to the consideration of the relevant market area or the propriety of establishing a new dealership pursuant to T.C.A. 55-17-114 (c)(20).

3. The Commission has jurisdiction to hear this Protest.

4. The Relevant Market Area for Jim's Motorcycle Sales includes the Kingsport, Tennessee area.

5. The Kingsport market area is adequately served by the existing Honda motorcycle dealers in the Tri-Cities regional area.

6. Under all the facts of this case it would not be appropriate or fair for Honda to establish a new motorcycle dealer in Kingsport, Tennessee.

7. Honda is not authorized to appoint a new motorcycle dealer in the Kingsport market area, and no license will be issued for a motorcycle dealer in the Kingsport market area.

American Honda filed a petition for judicial review, arguing that the Commission's Final Order should be reversed. It argued the Commission lacked jurisdiction over the protest because Jim's Motorcycle did not have standing under Tenn. Code Ann. § 55-17-114(c)(20) to pursue the protest. Alternatively, American Honda argued that if Jim's Motorcycle had standing and the Commission had jurisdiction, the Commission's conclusion that Kingsport was in Jim's Motorcycle's relevant market area was arbitrary and capricious because it was not supported by substantial and material evidence. Finally, American Honda argued that the Commission's Final Order should be reversed because the Commission did not determine whether the location of the proposed dealership was within the boundaries of Jim's Motorcycle's relevant market area, and it did not define the boundaries of Jim's Motorcycle's relevant market area.

The trial court held a hearing on July 1, 2015, and it filed a Memorandum and Order on January 8, 2016, affirming the Commission's decision. The court relied, in part, on an "internal RMA map" that American Honda had prepared showing that a significant portion of the Kingsport area was in Jim's Motorcycle's relevant market area. The court also relied on testimony by Ken Hayes that he considered Kingsport to be in his market area because he had served the area for many years and advertised to customers in Kingsport through television, direct mail, radio, and the internet.

The trial court interpreted the statutory language at issue as follows:

Under the statute, the Commission was authorized to make a final and binding determination "under the principles herein prescribed for a determination of the relevant market area, the adequacy of the servicing of the area by the existing dealer or dealers and the propriety of the granting of additional dealerships." At the time Jim's filed its protest, there was no definition in his franchise agreement for RMA. Honda had used its internal map for market areas and the individual franchise dealers had operated within separate, distinct market areas. According to the technical record,

(1) Jim's advertised, serviced, and sold to a large portion of the Kingsport market area for years and continued to do so after Jim's of Kingsport closed in 2009;

(2) Honda's internal map showed a significant portion of Kingsport within Jim's PMA;

(3) Mr. Ken Hayes operated Jim's as if Kingsport was in his RMA;

(4) Mr. Hayes, Sr. initially owned both the Kingsport and the Johnson City Honda franchises, and for many years, the two locations shared warehouse space, used a common distribution system and traded inventory to meet their Customers' needs; and

(5) In 2009, Honda's representative told Mr. Ken Hayes that if Jim's kept up its level of sales and service in Kingsport, Honda would not replace the Kingsport dealership.

The creation of the Kingsport dealership injected the strong likelihood of franchise disputes over market share, placing a competitive franchise in the relevant market area previously serviced and impliedly granted to another motor vehicle dealer. The statute authorizes the Commission to deny a license under such a situation and directs the Commission to determine the relevant

market area, the adequacy of the servicing of the area by the existing dealer or dealers and the propriety of the granting of additional dealerships.

Honda belatedly attempted to deprive Jim's of its right to protest and to usurp the Commission's authority to hear the protest by its post-protest actions, creating a new RMA for Jim's which excluded the Kingsport area and sending a second letter to Jim's, attempting to revoke Jim's right to protest. This is not the intent of the statute. As counsel for the Commission explained, if Honda's strategy were successful, any manufacturer could avoid its responsibilities to its existing franchisees and dealers under Tenn. Code Ann. § 55-17-114(c)(20). The statute intends that a manufacturer will include a RMA in each franchise agreement with each dealer. If, however, the manufacturer fails to make such a designation, then an existing dealer should not be deprived of standing to protest the placement of a new dealer in its market area. The statute would be invalidated by such a deliberate omission and by subsequent actions of the manufacturer to the detriment of the dealers and the public. Second, if Honda, as a manufacturer, unilaterally changes a protesting dealer's RMA after the initiation of a protest, then the manufacturer will have succeeded in denying the dealer the right to protest, effectively emasculating the statute and the Commission.

. . . Honda is not permitted to create a new RMA to avoid the protest filed by Jim's when it failed to assign an RMA in Jim's original franchise agreement, nor is it allowed to unilaterally assign a different RMA after Jim's filed its protest.

Further, as noted above, when Jim's Motorcycle of Kingsport closed in 2009, Mr. Hayes was told that Honda would not replace the Kingsport dealership if Jim's maintained its sales and service to the Kingsport market. Honda never complained to Jim's of any deficiencies in this regard. Honda called Jim's to solve difficult motorcycle service problems that other dealers could not fix. In 2014, Jim's sales performance exceeded that expected of a national or state dealer. Jim's sold more Honda products in two recent years, 2012 and 2014, than any other Honda dealer.

Despite Honda's attempt to demonstrate that a new dealership was warranted in Kingsport, Honda's expert, Mr. Frith, confirmed that his study reflected that none of the area Honda motorcycle dealerships' 2011 sales were close to their pre-2008 sales levels. Mr. Frith also testified that the "Lost Opportunity" for motorcycle sales in the Kingsport area was only 8 units. Based upon its discussion and votes, it appears that the Commission was not convinced that there was sufficient additional sales opportunity for Honda

motorcycles in the Kingsport area for a new dealer with a large facility to survive without taking significant sales away from other Honda motorcycle dealers in the area. . . . Substantial and material evidence support the Commission's decision that a new dealership in Kingsport was not warranted.

. . . .

. . . [T]he majority of the Commissioners agreed that when Jim's filed its protest, the Kingsport market was considered to be Jim's, as Mr. Hayes had been active in advertising in and servicing that area. It appears that the Commission determined it should evaluate Jim's protest based on the facts as they existed at the time of Jim's protest, not after the action subsequently taken by Honda months later. After consideration of all the evidence, including (a) the late assignment by Honda of a RMA that excluded Kingsport from Jim's market, (b) the minimal loss of sales projected by Honda, (c) the representation by Honda's agent that Honda would not open a new Kingsport dealership if Jim's serviced Kingsport, (d) Honda's internal map reflecting Kingsport in Jim's market area, (e) Jim's record of service to Kingsport, and (f) the less-than-robust economics of the Tri-Cities area in 2013, the Commission declined to approve Honda's application for a new dealership in Kingsport. This decision was supported by substantial and material evidence. The Commission has discretion to grant or deny an application and the majority of the Commission voted to sustain the protest.

(Footnotes omitted.)

American Honda appealed the trial court's decision and argues the Commission erred in the following ways: (1) ruling that Jim's Motorcycle had standing to protest the establishment of new dealership in Kingsport; (2) finding that the Kingsport market area was being adequately serviced by existing dealers and that it would be inappropriate to establish a new dealership in Kingsport; (3) determining that Kingsport was in Jim's Motorcycle's relevant market area; and (4) failing to define the geographic boundaries of Jim's Motorcycle's relevant market area.

## II. ANALYSIS

### A. Standard of Review

Judicial review of the Commission's decision is governed by Tenn. Code Ann. § 4-5-322(h), which provides:

The court may affirm the decision of the agency or remand the case for further

proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

The Tennessee Supreme Court has stated that a court's review of an agency's decision is "narrow and deferential," and that trial and appellate courts are to apply "the same limited standard of review." *StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 668, 669 (Tenn. 2016). The Court explained that this narrower and more limited standard of review "reflects the general principle that courts should defer to decisions of administrative agencies when they are acting within their area of specialized knowledge, experience, and expertise." *Id.* at 669 (citing *Tenn. Envtl. Council, Inc. v. Tenn. Water Quality Control Bd.*, 254 S.W.3d 396, 401-02 (Tenn. Ct. App. 2007)).

The *StarLink* Court further explained that an agency's decision is "arbitrary or capricious," for purposes of the statute, if there is no "substantial and material evidence supporting the decision." *Id.* Although the phrase "substantial and material evidence" is not defined in the statute, courts have determined that it means less than a preponderance of the evidence, but more than a mere "'scintilla or glimmer' of evidence." *Id.* (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)). The *StarLink* Court continued:

> A decision with evidentiary support can be arbitrary or capricious if it amounts to a clear error in judgment. *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007) (citing *Jackson Mobilphone Co., Inc. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110 (Tenn. Ct. App. 1994)). A

decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Civil Serv. Comm'n*, 216 S.W.3d at 316 (quoting *Jackson Mobilphone*, 876 S.W.2d at 111). "If there is room for two opinions, a decision is not arbitrary or capricious if it is made honestly and upon due consideration, even though [a reviewing court] think[s] a different conclusion might have been reached." *Bowers v. Pollution Control Hearings Bd.*, 103 Wash. App. 587, 13 P.3d 1076, 1083 (2000) (citing *Buechel v. Dep't of Ecology*, 125 Wash.2d 196, 884 P.2d 910, 915 (1994) (en banc)) (explaining the "arbitrary or capricious" standard under Washington's version of the Uniform Administrative Procedures Act). The "arbitrary or capricious" standard is a limited scope of review, and a court will not overturn a decision of an agency acting within its area of expertise and within the exercise of its judgment solely because the court disagrees with an agency's ultimate conclusion. *See id.* (citing *Buechel*, 884 P.2d 910 at 915).

*Id.* at 669-70.

The outcome of this case turns on the interpretation and application of Tenn. Code Ann. § 55-17-114(c)(20) to the facts before us. When interpreting a statute, our goal is "to give full effect to the General Assembly's purpose, stopping just short of exceeding its intended scope." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010) (citing *Larsen-Ball v. Ball*, 301 S.W.3d 228, 232 (Tenn. 2010) and *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009)). "At the same time, courts must avoid inquiring into the reasonableness of the statute or substituting their own policy judgments for those of the legislature." *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997).

We begin by reviewing the words used in a statute because the words reflect the legislative purpose. *Lee Med.*, 312 S.W.3d at 526 (citing *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008)). "Every word in a statute is presumed to have meaning and purpose." *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012). "[B]ecause [statutory] words are known by the company they keep, courts must also construe these words in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc.*, 312 S.W.3d at 526 (citing *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)) (additional citations omitted). "'[W]e will not apply a particular interpretation to a statute if that interpretation would yield an absurd result.'" *Gen. Motors Corp. v. Tenn. Motor Vehicle Comm'n*, No. M2008-00082-COA-R3-CV, 2008 WL 4756809, at *2 (Tenn. Ct. App. Oct. 30, 2008) (quoting *State v. Flemming*, 19 S.W.3d at 197).

B.  Jim's Motorcycle's Standing

American Honda first claims Jim's Motorcycle lacked standing under Tenn. Code Ann. § 55-17-114(c)(20) to protest American Honda's plan to establish a new dealership in Kingsport.  The doctrine of "standing" is used to determine whether a particular litigant is properly situated to pursue an action.  *Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006).  According to American Honda, "the statute gives protest rights only to those dealers who were previously granted an RMA under their dealership agreement that includes the specific location of a proposed new dealership."  In making this argument, American Honda focuses only on the first part of subsection (20) and ignores the language following the word "provided," which immediately follows the definition of "relevant market area":

> **provided**, that if the manufacturer wishes to grant a franchise to an independent dealer . . . then the manufacturer shall give written notice to the existing dealer or dealers in the area, and the matter shall be submitted to the commission for final and binding action under the principles herein prescribed for a determination of the relevant market area, the adequacy of the servicing of the area by the existing dealer or dealers and the propriety of the granting of additional dealerships. The complaint, whether filed by an existing dealer or upon motion of the commission, shall be filed within thirty (30) days of the receipt by affected dealers of notice as required herein, and if no protests are filed, the manufacturer may proceed to grant the additional franchise.

Tenn. Code Ann. § 55-17-114(c)(20) (emphasis added).

Subsection (20) must be read together with the language set forth in section (c) of the statute.  Section (c) authorizes the Commission to deny an application for a license to a manufacturer or distributor who has previously granted a competitive franchise to another dealer in that relevant market area.  The statute defines "relevant market area" in the first part of the next sentence as "that area as described or defined in the then existing franchise or dealership of any dealer or dealers."  Tenn. Code Ann. § 55-17-114(c)(20).  The parties agree that American Honda did not describe or define a relevant market area in Jim's Motorcycle's franchise or dealership agreement until December 13, 2013, which was more than eight months after American Honda notified Jim's Motorcycle of its intent to establish a new dealership in Kingsport, and more than seven months after Jim's Motorcycle filed a formal protest with the Commission.

Following the definition of "relevant market area," the statute addresses the situation where a manufacturer wants to grant a new franchise to an independent dealer.  In that case, the statute requires the manufacturer to provide written notice to the other dealers in the area, and if the notified dealer(s) object(s) to the new franchise, the dealer(s) can file a protest and

- 14 -

"the matter shall be submitted to the commission for final and binding action . . . for a determination of the relevant market area, the adequacy of the servicing of the area by the existing dealers and the propriety of the granting of additional dealerships." Tenn. Code Ann. § 55-17-114(c)(20).

Jim's Motorcycle argues it had standing to file a protest with the Commission based on the language of the statute beginning with "provided, that." American Honda, relying on the first part of subsection (20), asserts Jim's Motorcycle did not have standing to file the protest when it did because American Honda had not formally delegated a relevant market area to Jim's Motorcycle in any franchise or dealership agreement. American Honda also argues the Commission did not have authority to determine Jim's Motorcycle's relevant market area for the same reason.

The General Assembly has granted the Commission the "powers and duties necessary and proper to enable it to fully and effectively carry out the provisions and objectives of [the Motor Vehicle Sales Licensing Act]." Tenn. Code Ann. § 55-17-107. The Commission is specifically authorized "to regulate and to license motor vehicle manufacturers, distributors, [and] dealers . . . to prevent frauds, impositions and other abuses . . . ," Tenn. Code Ann. § 55-17-101, and it is "empowered to promote fair dealings in the automobile business by preventing various trade practices and abuses . . . and protecting dealers against the overwhelming economic power and potential abuses thereof by manufacturers." *Gen. Motors Corp. v. Capital Chevrolet Co.*, 645 S.W.2d 230, 234 (Tenn. 1983).

By arguing that Jim's Motorcycle lacks standing to protest American Honda's plan to establish a new dealership in Kingsport, American Honda is asking this Court to ignore the language of Tenn. Code Ann. § 55-17-114(c)(20) starting with the word "provided." This argument flies in the face of the rules of statutory construction requiring that we give meaning to all words the General Assembly includes in its laws. The statute requires the manufacturer to "give written notice to the existing dealer or dealers in the area." The requisite notice is not limited to those dealers located in the "relevant market area" of the proposed new dealership, as American Honda argues. Jim's Motorcycle is about twenty miles from the proposed location,[3] and the fact that American Honda provided notice to Jim's Motorcycle shows that American Honda considered Jim's Motorcycle to be "in the area" of the proposed new location. Giving effect to all of the words used in the statute, we conclude Jim's Motorcycle had standing to file a protest with the Commission in this case after receiving the notice from American Honda.

American Honda next argues that its actions in the months following the protest, including the official determination of Jim's Motorcycle's relevant market area and the

---

[3]American Honda points out that Jim's Motorcycle is "more than twenty driving miles" from the proposed location in Kingsport.

attempted rescinding of its earlier notice to Jim's Motorcycle, had the effect of divesting Jim's Motorcycle and the Commission of the authority to proceed with the protest. In taking the actions it did following the filing of the protest, American Honda attempted to circumvent the statute. Once Jim's Motorcycle filed its protest with the Commission, however, the Commission became authorized to "determin[e] . . . the relevant market area, the adequacy of the servicing of the area by the existing dealer or dealers and the propriety of the granting of additional dealerships." Tenn. Code Ann. § 55-17-114(c)(20). Indeed, a dealer notified of a proposed new dealership "in the area" only has thirty days from the time it receives notice to file a protest with the Commission. Once a protest is filed, it is up to the Commission, not the manufacturer, to determine the dealer's relevant market area for purposes of the protest. If American Honda were permitted to define (or redefine) a dealer's relevant market area after a protest is filed, it would effectively be able to eliminate the rights of any existing dealer to protest the establishment of a new dealership simply by removing the disputed area from the dealer's relevant market area. This is the type of abuse the statute was designed to prevent. *See General Motors Corp. v. Tenn. Motor Vehicle Comm'n*, 2008 WL 4756809, at *4 (stating manufacturer will not be permitted to engage in improper and unfair practices statute is designed to prevent).

American Honda relies on a decision by the Chancery Court to support its position, *Bill Heard Chevrolet Corp–Nashville v. Tennessee Motor Vehicle Commission*, No. 99-1642-II (Davidson Ch. Ct. Feb. 1, 2000), which we find inapposite to the facts at hand. In the *Bill Heard* case, two dealers (Dealer A and Dealer B) were granted separate relevant market areas in their dealer agreements, and Dealer A contested Dealer B's proposed relocation within Dealer B's relevant market area. Dealer A filed a protest and the Commission determined that Dealer A was not entitled to a contested case hearing because Dealer B was not planning to relocate to an area within Dealer A's previously granted relevant market area. The chancery court agreed with the Commission, stating that "a hearing will be held only if a competitive franchise is granted by a motor vehicle manufacturer . . . to a dealer in an area in the 'relevant market area' of another dealer who has previously been granted a franchise by that manufacturer." Even if the chancery court's decision had precedential value for the Court of Appeals, which it does not, the chancery court's holding is clearly limited to the facts of the *Bill Heard* case and does not apply to the situation where the complaining dealer had not been granted a relevant market area when the protest was filed, as here.

C. Substantial and Material Evidence

At the conclusion of the hearing, the Commission decided that (1) the relevant market area for Jim's Motorcycle included the Kingsport area; (2) the Kingsport market was adequately served by the existing Honda motorcycle dealers in the Tri-Cities area; (3) it was not appropriate for American Honda to establish a new motorcycle dealer in Kingsport; and (4) no license would be issued for a new motorcycle dealer in the Kingsport market area. American Honda argues that the Commission's conclusions were not supported by

- 16 -

substantial and material evidence.  Based upon our review of the record, we disagree.

Evidence was introduced that Ken Hayes' father, Jim Hayes, Sr., began working in the motorcycle business in 1937 when he began selling motorcycles under the name Jim's Motorcycle.  Jim Hayes, Sr., became a Honda dealer in 1966, with dealerships in Kingsport and Johnson City.  The dealership in Kingsport was known as Jim's Kingsport, and the dealership in Johnson City was known as Jim's Motorcycle.  The elder Mr. Hayes managed these stores with the help of his sons, Ken and Jim, Jr.  Ken was co-owner of Jim's Motorcycle, and Jim, Jr., was the co-owner of Jim's Kingsport.  Mr. Hayes[4] testified that his family always considered Jim's Motorcycle to be the parent company of Jim's Kingsport.  Mr. Hayes explained that for as long as his family owned and operated Jim's Kingsport, Jim's Motorcycle received inventory for both of the stores and distributed the inventory between the two locations.  He testified that the two stores worked with one another and did not compete against each other:

> We [Jim's Motorcycle] warehoused.  We had the warehouse, we had the larger showroom and we were the center point with the distribution between the two stores.

Mr. Hayes explained that if one of the brothers needed a motorcycle for a customer that the other brother had in his store, they worked together to transport the motorcycle from one store to the other.  Mr. Hayes testified that Kingsport was his "trade area" and "has been for 40 years."  He testified that Jim's Motorcycle advertised on the internet, it paid for local advertising in Kingsport through the television and radio, and it sent direct mail advertising to residents in Kingsport.

When asked about the economic conditions for the Tri-Cities area (Johnson City, Kingsport, and Bristol, Tennessee) beginning in 2009, Mr. Hayes responded that the area experienced "a serious dropoff.  The economy really went south and we went into a very, very, unsatisfactory financial situation."  As a result of declining sales, Jim's Kingsport closed in January 2009.  Mr. Hayes testified that he was not in a financial position to purchase the Kingsport dealership when it closed, but that "the Honda rep told me, if you can keep the level up in Kingsport as to sales, there is no need of another dealership."

Mr. Hayes testified that no one from American Honda ever told him he was not meeting a particular measurement of sales, either in the Kingsport area or anywhere else.  Mr. Hayes testified that he believed he and the other area dealers were adequately serving the Kingsport market and that a new Level 5 Powerhouse dealer in Kingsport would negatively affect his sales.  According to Mr. Hayes,

---

[4]Both Jim Hayes, Sr., and Jim Hayes, Jr., are deceased.  Unless otherwise noted, all references to "Mr. Hayes" are to Ken Hayes, current owner of Jim's Motorcycle, along with his son Kirk.

We're kind of like a center hub in Johnson City. That was one of my father's original intents that he wanted to come to Johnson City. He felt it was the hub of the tri-city area because we're nestled up in the neck of the state. We're 20 and 30 miles from either state line, North Carolina or Virginia, and we're very close in there.

Although American Honda had never formally assigned a relevant market area to Jim's Motorcycle before Jim's Motorcycle filed its protest with the Commission, an internal document generated by American Honda showed a significant portion of Kingsport was in Jim's Motorcycle's relevant market area. Michael Rizner was the manager of American Honda's motorcycle dealer network at the time of the hearing before the Commission. He testified that in 2011, Honda conducted a national market study to find lost opportunities. American Honda believed it was losing sales opportunities in the Kingsport area. Focusing on the vicinity of Kingsport, however, the study identified Pound, Virginia, not Kingsport, Tennessee, as an optimal location for a new dealership. Mr. Rizner explained that the optimal location analysis was of limited utility because it failed to take into account factors such as population density, economics, or where an approved candidate would want to place its dealership. According to American Honda, it never adopted the optimal location map as a reflection of the dealers' actual market areas, and American Honda never provided this document (outside of discovery) to any dealer, including Jim's Motorcycle.

The evidence suggests that American Honda may have decided to establish a new dealership in Kingsport rather than Pound because of a proposal it received from Jimmy Schofield, a dealer in Greeneville, Tennessee. Mr. Schofield had a Powerhouse Level 4 dealership, which did not carry all of Honda's products, and he was interested in opening a Powerhouse Level 5 dealership in Kingsport, which would be a larger store that would carry all of Honda's products and would be branded to American Honda's specifications.

American Honda introduced the testimony and report of John Frith, an expert it retained to perform a dealer network analysis regarding the proposed establishment of a dealership in Kingsport. Mr. Frith acknowledged that the average annual employment in Kingsport and Johnson City for 2014 was lower than in any year since 2000. He further acknowledged that the median household income for the area was less than the median income of the State of Tennessee as a whole and less than that of the neighboring states of North Carolina and Virginia.

According to Mr. Frith's calculations, the number of on-road motorcycles that should have been sold in the Kingsport market for the year 2013 was twenty-five. Only seventeen were actually sold there, however, resulting in a potential loss of eight units. For the years 2012 and 2014 year-to-date, Mr. Frith testified that American Honda's records showed that Jim's Motorcycle sold more Honda products in the Kingsport market than any other dealer. Further, Mr. Frith acknowledged that Jim's Motorcycle's 2014 year-to-date sales exceeded

American Honda's expectations for either the national dealer average or the Tennessee dealer average.

As the *StarLink* Court wrote, we are not supposed to second-guess the weight an administrative decision gives to evidence presented at a contested case hearing, even when the evidence could support a different result. *StarLink*, 494 S.W.3d at 669-70. As discussed, evidence was introduced that (1) Jim's Motorcycle and, at least at some point, American Honda, treated the Kingsport area as falling in the relevant market area for Jim's Motorcycle and (2) Kingsport was within Jim's Motorcycle's relevant market area. Evidence was also introduced that the Kingsport market was adequately served by the existing Honda motorcycle dealers in the Tri-Cities area. Although the dealers in this area experienced a decline in the sales of motorcycles in 2009, the evidence showed this was due to the overall economy rather than poor performance by the area's dealers. The Commission was acting within its area of specialized knowledge in ruling as it did and determining that Kingsport could not support another motorcycle dealer. We find no basis upon which to second-guess the weight the Commission gave to the evidence presented at the hearing. Accordingly, we conclude the Commission's decision declining to issue a license for a new dealership in Kingsport was not arbitrary or capricious and that it was supported by substantial and material evidence.

American Honda contends the Commission failed to follow the statute's requirement that it determine the relevant market area of Jim's Motorcycle. However, the Commission determined that the relevant market area for Jim's Motorcycle "includes the Kingsport Tennessee area." We do not interpret the statute as requiring the Commission to include the metes and bounds of a dealership's relevant market area. The issue in this case was whether American Honda could establish a new dealership *in the Kingsport area*, and the Commission determined that *the Kingsport area* fell within Jim's Motorcycle's relevant market area. By so ruling, the Commission fulfilled its requirement under the statute to determine Jim's Motorcycle's relevant market area for purposes of this matter.

III. CONCLUSION

The Commission's decision is affirmed. Costs of appeal are assessed against the appellant, American Honda Motor Co., Inc., for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE