IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2024

## ELIZABETH CLARKE v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. 0546-GL-21-0503670-001     James A. Haltom, Commissioner, TN. Claims**
**Commission (Middle Division)**

———————————————————

### No. M2023-00776-COA-R3-CV

———————————————————

State employee Insured received radiation treatment for tongue cancer. Insurance Company denied authorization of the treatment as "investigational" and not "medically necessary" pursuant to the insurance plan and its medical policy. After two direct appeals of the denial to the insurance claim administrator, Insured appealed to the Tennessee Claims Commission. The Claims Commission found that the treatment was investigational under the plain language of both the plan and the policy and thus not a covered expense. As the denial of coverage did not amount to a breach of contract, the Claims Commission granted Insurance Company's motion for summary judgment. Finding no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claim Commission**
**Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and JEFFREY USMAN, JJ., joined.

Timothy J. Rozelle, Northridge, California; Hudson T. Ellis and Kaci D. Garrabrant, Chattanooga, Tennessee, for the appellant, Elizabeth Clarke.

Jonathan Skrmetti, Attorney General and Reporter; Mary Elizabeth McCullohs, Senior Assistant Attorney General, for the appellee, State of Tennessee, Tennessee Claims Commission.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

As a state employee, Claimant/Appellant Elizabeth Clarke ("Appellant") was insured for health care benefits under the State of Tennessee Comprehensive Medical and Hospitalization Program, a group employee welfare benefit plan ("the Plan"). The Plan was administrated in relevant part by BlueCross BlueShield of Tennessee ("BCBST").

Appellant was diagnosed with tongue cancer in 2017. She sought treatment with Provision CARES Proton Therapy Center ("Provision"). In a letter of medical necessity dated July 20, 2017, Provision explained that "[c]oncurrent radiotherapy and systemic therapy is a standard treatment program for [cancers like Appellant's]" and "[t]ypically, radiotherapy is administered with x-rays utilizing intensity modulated radiotherapy[.]" However, Provision further explained that proton beam radiation therapy ("PBRT"), "a promising emerging modality for delivering radiotherapy for head and neck cancers[,]" would "lead to better preservation of swallowing function, improved nutrition, and avoidance of permanent PEG tube[,]" and was therefore the best course of treatment. Appellant received PBRT from August 16, 2017, through October 4, 2017.

In the course of providing PBRT to Appellant, Provision filed a claim with BCBST for coverage of the treatment. By letter of August 9, 2017, BCBST denied the claim, stating that the "service is considered investigational for conditions or diseases other than [certain specified conditions] according to the [BCBST] Medical Policy for Proton or Helium Ion Beam (Charged Particle) Radiation Therapy."

Provision requested that BCBST review the application for benefits again. "Following a Peer to Peer phone conversation," BCBST affirmed the denial of benefits by letter of August 11, 2017. BCBST again stated that its medical policy "considers proton therapy investigational for conditions or diseases" other than the specified conditions.

Provision requested another review of BCBST's decision on Appellant's behalf. By letter of August 28, 2017, BCBST denied Appellant's request for authorization of the PBRT, explaining:

> Following a review by a radiation oncologist, the documentation does not support the medical necessity of [PBRT] per peer-reviewed literature and plan language for this member with cancer at the base of the tongue. The proposed [PBRT] for this member is not considered a standard treatment option recognized in the oncologic medical community. There is a lack of any significant data published in peer-reviewed medical literature supporting the effectiveness and safety of [PBRT] for head and neck or base of tongue malignancies. There are multiple studies in the form of single-institution, non-randomized trials that demonstrate the need for additional trials to determine the effectiveness and safety of [PBRT] compared to photon-beam radiation intensity-modulated radiation therapy. Per the plan language, the proposed treatment with [PBRT] is considered experimental/investigational,

as it is not shown to improve net health outcomes outside of the investigational setting.

Appellant personally appealed the denial to BCBST in September 2017, explaining that she did "not understand why this service is not considered medically necessary" and that PBRT was her best treatment option. A Level I Grievance Committee hearing was held on October 19, 2017, and BCBST again denied authorization of the PBRT, "based on a finding that the service [was] investigational." In a letter of the same date, BCBST indicated that the matter "was also reviewed by a BCBST physician consultant" who upheld the denial of benefits after finding that the "provided medical documentation[,]" including BCBST's medical policy, "[did] not clearly demonstrate" that the PBRT provided "significant" benefits compared to other types of radiation therapy.[1] The letter further stated that:

> BCBST bases its medical review rulings on MCG criteria and our medical policies. We use evidence-based evaluation in setting a policy. The medical data we use comes from many sources. We study the work of medical technology review bodies. We read peer-reviewed medical studies. We also listen to the views of network specialists. Before we adopt a policy, physicians inside and outside BCBST review it. All policies can be seen on our Web site. . . . You can also ask for them by phone.

Included with this letter was a copy of the BCBST policy on PBRT and a printout of the section of the Plan indicating that "[e]xperimental/investigational medical or surgical procedures and prescription drugs as initially determined by the claims administrator to not yet be recognized as acceptable medical practice or which require, but have not received, approval by a federal or other governmental agency" were excluded from coverage.

Eventually, Appellant appealed BCBST's denial again. A Level II Grievance Committee hearing was held on July 14, 2020. BCBST issued a denial letter on July 17, 2020, explaining that "[a]fter the review of all the available information, including review by an outside physician who specializes in radiation oncology," PBRT was still deemed investigational as treatment for Appellant's tongue cancer under BCBST's medical policy. Specifically, the letter stated that "[t]he reviewer indicated that there are no unique clinical circumstances applicable that would make the use of [PBRT] for the treatment of [cancer] in the base of the tongue medically appropriate."[2]

---

[1] The "Peer Reviewer Final Report" stated that the reviewer, Dr. Joel Kochanski, had examined Appellant's medical records and a significant quantity of medical writings, as well as the Plan, the BCBST policy manual, the American Society for Radiation Oncology model policy, and the National Comprehensive Cancer Network guidelines in rendering his opinion.

[2] In his report, the second reviewer, Dr. Eric Rost, indicated that he had examined the BCBST policy, a BCBST case summary, the various requests for coverage sent by Appellant and Provision, the August 11, 2017 denial letter, and the first peer review report.

Appellant then filed a complaint against Appellee the State of Tennessee ("the State") with the Tennessee Department of the Treasury Division of Claims and Risk Management.[3] The claim was subsequently transferred to the Tennessee Claims Commission ("the Claims Commission") on August 17, 2021. In her complaint, Appellant argued that BCBST's medical policy designating PBRT as experimental/investigational for head and neck cancers was "outdated and unreliable[,]"and that "[n]o contract, policy or plan issued or administered by BCBST contains any exclusion for PBRT." She alleged that the failure to authorize PBRT as treatment for her tongue cancer was therefore a breach of the Plan and the State's fiduciary duty.

The State filed an answer to the complaint denying any liability on September 22, 2021. Subsequently, on October 28, 2022, the State filed a motion for summary judgment. The State argued that there was no breach of contract in denying Appellant's request for benefits, as the Plan explicitly excluded coverage of treatments, such as PBRT, that were deemed investigational by BCBST policy.

Appellant filed a competing motion for summary judgment on October 31, 2022. Appellant argued that BCBST relied solely on its policy in deeming PBRT an experimental treatment for her tongue cancer, rather than the definition of experimental used in the Plan itself. Appellant argued that because the Plan and the policy were in conflict, and because the Plan did not incorporate the policy into its provisions, BCBST should have used the Plan language and found the PBRT to be covered. Moreover, Appellant argued, the policy's assertion that PBRT was investigational was outdated, unreliable, and opposed by a vast array of medical literature. Appellant included with her motion the affidavit of her counsel, which included a significant number of "additional scientific journal articles produced by [Appellant] in discovery in support of her claim[.]"

The competing motions for summary judgment were heard in February 2023, and the Claims Commission entered its order on April 19, 2023. The Claims Commission found that the Plan expressly stated that services that were excluded from coverage or not consistent with BCBST policies would not be considered covered expenses. As experimental or investigational procedures were specifically excluded from coverage and BCBST policy specifically designated PBRT for certain head and neck cancers as investigational, the Claims Commission concluded that PBRT was not a covered expense for treatment of Appellant's tongue cancer. The Claims Commission further found that Provision's July 2017 letter of medical necessity clearly described PBRT as an "emerging modality[.]" As such, the Claims Commission concluded that even using only the description of experimental/investigational procedures included in the Plan, i.e., those

---

[3] Appellant's complaint named as defendants the State of Tennessee Comprehensive Medical and Hospitalization Program, the Tennessee State Insurance Committee, and the State of Tennessee Benefits Administration. In all subsequent documents, the State was listed as the sole defendant.

procedures not yet recognized as acceptable medical practice, PBRT would still be considered investigational by the words of Appellant's own doctors. Thus, BCBST's denial of Appellant's request for coverage for PBRT did not amount to a breach of contract. The Claims Commission granted the State's motion for summary judgment and denied Appellant's motion.

This appeal followed.

## II. STANDARD OF REVIEW

The issue raised in this appeal involves whether the Claims Commission correctly granted the State's motion for summary judgment on Appellant's claim for benefits.[4] Proceedings before the Claims Commission are conducted pursuant to the Tennessee Rules of Civil Procedure, and appellate review of the Claims Commission's ruling is governed by the Tennessee Rules of Appellate Procedure. Tenn. Code Ann. § 9-8-403(a)(1).

Accordingly, we review the Claims Commission's grant of summary judgment de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04.

## III. ANALYSIS

To establish her breach of contract action, Appellant is required to establish (1) the existence of a valid and enforceable contract, (2) a deficiency in performance amounting to a breach of the contract, and (3) damages resulting from said breach. *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citing *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Based on its finding that PBRT was considered by BCBST to be an investigational treatment for cancer of the tongue, and thus not a medical expense covered by the Plan, the Claims Commission determined that Appellant could not establish the breach element of her claim. The Claims Commission's grant of summary judgment can stand only if it is established, as a matter of law, that the Plan does not cover Appellant's PBRT treatment.

The scope of an insurance policy's coverage is an issue of law appropriately resolved by summary judgment when, as is the case here, the relevant facts are not in dispute. *Garrison v. Bickford*, No. E2010-02008-COA-R9-CV, 2011 WL 3241869, at *2

---

[4] Appellant does not appeal the denial of her motion for summary judgment.

(Tenn. Ct. App. July 29, 2011) (citing *American Indem. Co. v. Foy Trailer Rentals, Inc.*, No. W2000-00397-COA-R3-CV, 2000 WL 1839131 at * 2 (Tenn. Ct. App. Nov. 28, 2000)), *aff'd*, 377 S.W.3d 659 (Tenn. 2012). Nor is there any dispute as to the contents of the Plan; its interpretation therefore also presents only a question of law. *Id.* Questions of law are reviewed de novo, with no presumption of correctness. *Id.* (citations omitted).

The legal principles governing the interpretation of insurance policies are well settled:

> "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." *Blaylock & Brown Construction, Inc. v. AIU Insurance Co.*, 796 S.W.2d 146, 149 (Tenn. App. 1990). Words in an insurance policy are given their common and ordinary meaning. Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. *See e.g.*, *Moss v. Golden Rule Life Insurance Co.*, 724 S.W.2d 367, 368 (Tenn. App. 1986). Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured. *Allstate Insurance Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991).

*Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). Nevertheless, "the fact that the words may be difficult to apply to a given factual situation does not make those words ambiguous[,]" and "[a] strained construction may not be placed on the language used to find ambiguity where none exists." *VanBebber v. Roach*, 252 S.W.3d 279, 284, 286 (Tenn. Ct. App. 2007) (first quoting *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 914 (Tenn. Ct. App. 1994); and then quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)).

We turn first, then, to the relevant contractual language. The Plan provides that it will pay certain percentages of its insured's "covered expenses," which it defines in Section 1.08 as "the maximum allowable, medically necessary incurred expenses, as designated in Article XIII, including surgical and medical care expenses required for diagnosis and treatment of injury or illness."[5] In Section 13.01, the Plan further explains that "[a]ll medical . . . services, treatment and expenses will be considered covered expenses" if the following requirements are met:

(A) They are listed in Sections 13.02 or 13.03;
(B) They are not excluded from coverage under Section 13.04;
(C) They are determined to be medically necessary and/or clinically necessary by the claims administrator;

---

[5] At all times, we refer to the August 2017 version of the Plan included with Appellant's complaint.

- 6 -

(D) Are rendered by a participating provider or specialist or facility in the network or a nonparticipating provider or specialist or facility as provided in an applicable section and/or attachment herein;

(E) Are consistent with plan policies and guidelines; and

(F) Required by applicable state or federal laws or regulations.

Section 13.02(K) includes "[c]harges for chemotherapy and radiation therapy when medically necessary as determined by the claims administrator" among those expenses generally covered under the Plan. Section 13.04(A)(25) excludes from coverage "[e]xperimental/investigational medical or surgical procedures and prescription drugs as initially determined by the claims administrator to not yet be recognized as acceptable medical practice or which require, but have not received, approval by a federal or other governmental agency." Section 1.32 defines "medically necessary" or "clinically necessary" as those

> services or supplies, which are determined by a physician to be essential to health and are:
>
> (A) Provided for the diagnosis or care and treatment of a medical, mental health/substance abuse or surgical condition;
>
> (B) Appropriate and necessary for the symptoms, diagnosis or treatment of a medical condition;
>
> (C) Within standards of medical practice recognized within the local medical community;
>
> (D) Not primarily for the convenience of the covered person, nor the covered person's family, physician or another provider; and
>
> (E) Performed in the most appropriate, cost effective and safe setting or manner appropriate to treat the covered person's medical condition. The fact that a physician has prescribed, performed, ordered, recommended or approved a service or treatment does not, in and of itself, make it medically necessary and appropriate. The claims administrator will determine if an expense is medically necessary and/or clinically necessary.

The "Proton or Helium Ion Beam (Charged Particle) Radiation Therapy" section in BCBST's Medical Policy Manual ("the PBRT Policy") includes the following:

> **POLICY**
> - Proton/helium ion beam (charged particle) radiation therapy for the treatment of specified cancers is considered ***medically necessary*** if the medical appropriateness criteria are met. **(See Medical Appropriateness below).**

- Proton/helium ion beam (charged particle) radiation therapy for the treatment of all other conditions/diseases, including, but not limited to, the following is considered ***investigational***: . . .
  - Tumors of the head and neck except for skull-based chordomas and chondrosarcomas

. . . .

**IMPORTANT REMINDERS**

- . . . .
- We develop Medical Policies to provide guidance to Members and Providers. This Medical Policy relates only to the services or supplies described in it. The existence of a Medical Policy is not an authorization, certification, explanation of benefits or a contract for the service (or supply) that is referenced in the Medical Policy. For a determination of the benefits that a Member is entitled to receive under his or her health plan, the Member's health plan must be reviewed. If there is a conflict between the Medical Policy and a health plan, the express terms of the health plan will govern.

**ADDITIONAL INFORMATION**

For the treatment of localized prostate cancer, as well as other listed conditions considered investigational, proton beam therapy has not been shown to be superior to conventional radiation therapy at this time. Further randomized controlled studies are needed.

The PBRT Policy lists fifty-three medical or scientific sources and indicates a most recent review date of April 13, 2017.

The criteria for a treatment to be considered a covered expense under Section 13.01 are set out in a conjunctive list. Thus, if any criterion is not satisfied, Appellant's PBRT treatment is not covered under the Plan, no breach of contract resulted from BCBST's denial of coverage, and the State is entitled to judgment as a matter of law. *See conjunctive obligation*, *Black's Law Dictionary* (12th ed. 2024) ("An obligation composed of multiple performances that can be separately rendered or enforced; esp., an obligation in which several objects are connected by *and* (not *or*) or are in some other way clearly meant to be separately included in the contract.").

We begin with Section 13.01(A), which in turn leads us to consider Section 13.02(K). No argument has been made that either section is ambiguous and so we simply endeavor to give the included language its full effect. *See **Tata***, 848 S.W.2d at 650. Thus, to be considered a covered expense Appellant's treatment must be (1) radiation therapy (2) that the claims administrator determined to be medically necessary. There is no question, certainly, that PBRT is radiation therapy. Nor is there a genuine dispute that BCBST

determined that PBRT is not a medically necessary treatment for Appellant's condition.[6]

To be sure, the PBRT policy cited in BCBST's denial letters specifically excluded cancers like Appellant's from its list of circumstances where PBRT would be medically necessary. Indeed, there is no dispute that Appellant was being treated for a "[t]umor[] of the head and neck" that was not a "skull-based chordoma[ or] chondrosarcoma[.]" Furthermore, BCBST explained in its August 28, 2017 letter that "the documentation does not support the *medical necessity* of [PBRT] per peer-reviewed literature and plan language for this member with cancer at the base of the tongue" and that PBRT "is not considered a *standard treatment option* recognized in the oncologic medical community." (Emphasis added). And in its July 17, 2020 letter, BCBST stated that the second independent reviewer "indicated that there are no unique clinical circumstances that would make the use of [PBRT] for the treatment of [Appellant's cancer] in the base of the tongue *medically appropriate*." (Emphasis added). These letters from BCBST expressly deny the medical necessity of PBRT as treatment for Appellant's cancer. Although not cited in the letters, the language used by BCBST can be traced to the Plan's definition of "medically necessary" in Section 1.32, namely subsection B's requirement that the service be "[a]ppropriate and necessary for the . . . treatment of a medical condition[.]"

Considering this record, we conclude that the State effectively established that Appellant's PBRT was not "radiation therapy [that was] medically necessary as determined by the claims administration" as required by Section 13.02(K), and so not a covered expense under Section 13.01(A).[7] *See **Rye***, 477 S.W.3d at 264 (providing that when the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense").

---

[6] We note that Appellant does argue in her brief that BCBST "never denied [Appellant's] claim on the ground that her treatment was not medically necessary" and so any discussion of the medical necessity issue has been waived. However, it does not appear that Appellant included this argument in her motion for summary judgment. An issue not raised before the trial court is generally not considered on appeal. *See **In re Conservatorship of Turner***, No. M2013-01665-COA-R3-CV, 2014 WL 1901115, at *7 (Tenn. Ct. App. May 9, 2014) (citing Tenn. R. App. 36(a)). Regardless, as discussed, *infra*, BCBST did include the lack of medical necessity in its denial of coverage for Appellant's PBRT. Appellant herself indicated that she was aware that the denial of coverage stemmed in part from a lack of medical necessity in her September 2017 letter appealing the previous denials. Appellant's argument is therefore neither supported by the record nor evidence of a dispute to be resolved at trial. *See **Rye***, 477 S.W.3d at 265 (indicating that a nonmoving party must show more than "some metaphysical doubt as to the material facts" (citation omitted)).

[7] The lack of genuine dispute as to BCBST's determination that the PBRT was not medically necessary radiation therapy means that Section 13.01(C), requiring that any covered expense be deemed medically necessary by the claims administrator, would also exclude Appellant's treatment from coverage. Appellant does not discuss the application of either Section in her appellate brief.

In attempting to show that a genuine dispute remains as to whether her PBRT is covered under the Plan, Appellant attacks BCBST's reliance on the PBRT policy. Appellant focuses on Section 13.01(B) of the Plan, which provides that an otherwise covered expense will be excluded if listed in Section 13.04. Appellant argues that "PBRT is widely accepted as a cancer treatment[,]" and so would not be excluded as investigational as defined in Section 13.04(A)(25). Appellant highlights that her doctors at Provision recommended the treatment based on the benefits of PBRT over "conventional" radiation therapies and includes references to various scientific studies provided to BCBST during its internal review process. She argues that because PBRT would not be excluded under Section 13.04(A)(25), the PBRT policy deeming her treatment investigational could not, by its own terms, be used to decline coverage. Appellant emphasizes that an insurance company cannot base its coverage decisions on guidelines or policies that are inconsistent with the express terms of its plans.

We certainly do not contest that the PBRT policy states that in the event of a conflict in their language, the Plan's express terms would control. We do not, however, find any conflict in the plain language of the two documents. First, the Plan makes clear that the guidance within its policies is an important consideration in determining whether a treatment is a covered expense; Section 13.01(E) of the Plan specifically provides that only procedures consistent with BCBST policies are covered. And, as relevant, Section 13.04(A)(25) of the Plan excludes coverage for medical services that are investigational, which it defines as those procedures "determined by the claims administrator to not yet be recognized as acceptable medical practice[.]"[8] The PBRT policy does not offer a contrary definition of investigational. Instead, it lists those types and locations of cancer for which, as of the PBRT policy's most recent review date, April 13, 2017, BCBST determined PBRT to be investigational and those for which it did not. Rather than contradicting the Plan's description of investigational treatments, this delineation serves to provide examples of circumstances where PBRT would or would not be excluded as investigational. In this way, the PBRT policy expounds on Section 13.04(A)(25)'s limitation of coverage, it does not expand the limitation. *See **Mull for Mull v. Motion Picture Indus. Health Plan***, 865 F.3d 1207, 1210 (9th Cir. 2017) (finding a policy to be consistent with an insurance plan so long as it "neither adds to nor contradicts" the plan's existing terms (citation omitted)). Thus, the language of the Plan requires the application of the PBRT policy and the language of the PBRT policy does not prevent its application.[9]

Moreover, Appellant's argument is based on the premise that her treatment would

---

[8] No argument has been made that Section 13.04(A)(25)'s exclusion of treatments that had not received necessary federal approval is applicable in this case.

[9] The lack of genuine dispute as to the application of the PBRT policy means that Section 13.01(E), requiring that any covered expense be consistent with BCBST policies and guidelines, would also exclude Appellant's treatment from coverage. Beyond her argument that the PBRT policy should not have formed a basis for excluding coverage of her treatment, Appellant does not directly discuss the application of this Section in her appellate brief.

not have been excluded as investigational under the definition provided in Section 13.04(A)(25). Yet this theory fails to consider key language included in the Plan. Specifically, Section 13.04(A)(25)'s description of excluded investigational treatments provides that whether a service is recognized as acceptable medical practice is to be determined by the claims administrator—in this case, BCBST. Similar language, providing that the question of a treatment's medical necessity is to be determined by BCBST, is included in Section 13.02(K)'s description of covered radiation therapies, Section 13.01(C)'s requirement that a covered expense be deemed medically necessary, and Section 1.32(E)'s definition of medically necessary services.

Appellant offers no argument that this language is susceptible to more than one reasonable interpretation and so must be construed against BCBST. *See Tata*, 848 S.W.2d at 650. Neither does Appellant provide any authority to suggest that insurance contracts cannot include directives as to how or by whom decisions regarding coverage are to be made or that this sort of discretionary language in an insurance contract is not binding. *See* Amy B. Monahan & Daniel Schwarcz, *Rules of Medical Necessity*, 107 Iowa L. Rev. 423, 474 (2022) (noting that "even under a de novo standard of review there is typically no viable legal argument that an insured is entitled to coverage beyond that provided for in their insurer's rules of medical necessity when those rules form part of the governing legal documents"); *see also Linn v. BCBSM, Inc.*, 905 N.W.2d 497 (Minn. 2018) (concluding that the insurance plan unambiguously excluded coverage of PBRT for the plaintiff's condition based on a medical policy that "emphasized the tumor type and location in every section of the policy defining when PBRT was medically necessary" and reinstating grant of summary judgment to insurance company). Appellant also fails to offer any relevant authority to suggest that BCBST was required to defer to the scientific research she provided over its own internal evaluation. *See* Monahan & Schwarcz, *supra*, at 474 ("[T]o the extent an insurer's governing legal documents directly contain or incorporate by reference rules of medical necessity, courts generally treat those rules as binding, irrespective of their advisability from a medical or scientific standpoint."); *see also Howard v. Blue Cross Blue Shield of Arizona*, No. CV-16-03769-PHX-JJT, 2019 WL 3068202, at *4 (D. Ariz. July 12, 2019) (rejecting the argument that "Defendant should not have relied on an outdated [policy] which in turn relied on studies that failed to take into account recent science on PBRT" because plaintiff offered "no evidence that the [policy] on which Defendant relied was 'clearly erroneous'"), *aff'd*, 822 F. App'x 628 (9th Cir. 2020). In fact, while many of the cases relied upon by Appellant describe fact patterns distinctly at odds with the instant matter, these distinctions solidify our conclusion that the plain language of the Plan excludes coverage of Appellant's PBRT.

Appellant looks to *Prolow v. Aetna Life Insurance Co.*, for the idea that plan language always controls against medical guideline language and that an insured can overcome a denial of medical necessity by providing its own scientific research. 584 F. Supp. 3d 1118, 1138, 1140 (S.D. Fla. 2022). There, the district court determined that the insurance plan administrator's decision to deny coverage of the plaintiffs' PBRT was de

novo wrong. *Id.* at 1140, 1143. First, the definition of medically necessary services in both insurance plans at issue was found to be ambiguous by the district court because it did not include "any punctuation between the bullet points, or any words of limitation, conjunction, or disjunction[.]" *Id.* at 1139. The district court then construed the definition in favor of the plaintiffs and determined that the insurance company's policy on PBRT "impos[ed] a higher criterion" for a treatment to be deemed medically necessary than the plans. *Id.* at 1140. The insurance plans also did not "mention or purport to incorporate" the policy at issue. *Id.* at 1139. Finally, the district court concluded that the plans' definition of medical necessity did not include any language expressly vesting the insurance company with discretionary decision-making authority. *Id.* at 1149. As a result, the district court determined that the "extensive medical literature, detailed medical records, treatment plans and compelling evidence of individual risk factors" provided by the plaintiffs at the summary judgment stage was "enough to sustain a finding of 'medical necessity' as that concept [was] properly interpreted under a disjunctive reading of the bullet points employed in its definition." *Id.* at 1140. The district court explained that it would not have relied on the insurance company's internal reports that the plaintiffs' treatments were not medically necessary in the face of this fact pattern. *Id.* at 1140.

At each turn, the insurance plans in *Prolow* are distinct from the one at issue here. The definition of medical necessity in the Plan is not ambiguous, expressly mentions its policies, and grants BCBST discretionary decision-making authority. This same dissimilarity is found in other cases cited by Appellant. For example, in *Egert v. Connecticut General Life Insurance Co.*, the insurance company denied coverage of the plaintiff's treatment based on a set of policies described by the district court as "a compilation of secret, internal guidelines not disclosed to [plan provider] or to participants or beneficiaries of the [p]lan[.]" 900 F.2d 1032, 1036 (7th Cir. 1990). The district court found that the policy at issue contained provisions that were "substantially inconsistent and lead to contradictory dispositions of similarly situated claims." *Id.* at 1038. The denial of benefits was therefore arbitrary and capricious. *Id. See also Greenwell v. Grp. Health Plan for Emps. of Sensus USA Inc.*, No. 5:19-CV-577-FL, 2022 WL 3134110, at *12 (E.D.N.C. Mar. 29, 2022) (finding the insurance company's "proffered rationale for denying plaintiff's claim [was] contrary [to] the plan's language and relied on inconsistent interpretations of that language" where the policy required a showing that PBRT was *more* beneficial than an established alternative, but the plan required only that the PBRT be *as* beneficial as the alternative); *Welch v. HMO Louisiana/Blue Cross*, No. CIV.A. 08-4576, 2009 WL 3401046 (E.D. La. Oct. 20, 2009) (denial of coverage was based on policy's request for data beyond that required in the plan).

In *Pirozzi v. Blue Cross-Blue Shield of Virginia*, the insurance company denied coverage of the plaintiff's treatment on the basis of the plan's exclusion of coverage for "experimental or clinical investigative procedures[,]" a term not defined in the plan. 741 F. Supp. 586, 588 (E.D. Va. 1990). The decision was based on the application of the company's policy, which consisted of certain "technology evaluation criteria." *Id.* at 591.

However, "the criteria [were] not part of the [p]lan and the [p]lan nowhere state[d] that the Blue Cross criteria [were] determinative of a treatment's experimental status." *Id.* The district court accordingly looked to the scientific evidence presented by both parties to determine that the treatment was not experimental under the terms of the plan. *Id.* at 591–94. Yet the district court was very clear that its decision was "narrowly, but firmly, anchored in the specific expert medical testimony presented and in the terms and structure of the [p]lan's experimental exclusion provision" and that "a different experimental exclusion, or different expert testimony, or a plan that conferred broad discretion on the administrator might well require a different result." *Id.* at 594.

Here, the PBRT policy simply does not conflict with Section 13.04(A)(25)'s description of an investigational treatment. And the Plan both includes "a different experimental exclusion" and "confer[s] broad discretion on the administrator[.]" *Id.* Respectfully, Appellant's own research, therefore, supports a finding that her PBRT was excluded under Section 13.04(A)(25). Thus, there is no genuine dispute that Appellant's treatment would not meet the requirement set out in Section 13.01(B).[10]

In conclusion, the State has established that Appellant's PBRT was not a covered expense under the plain, unambiguous terms of the Plan. As the denial of benefits would therefore not amount to a breach of the Plan, the State was able to "demonstrate[e] that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the

---

[10] As noted by both parties, the cases cited by Appellant involve the denial of benefits under insurance plans governed by the Employee Retirement Income Security Act ("ERISA"), which does not apply to the Plan at issue here. However, as "the district court sits more as an appellate tribunal than as a trial court[,]" in an ERISA benefits denial case, the analysis employed by the district court is still of some value. *Prolow*, 584 F. Supp. 3d at 1135 (citations omitted). First, the insurance administrator's coverage decision is reviewed de novo. Only if the decision is deemed de novo wrong, does the court consider whether the administrator was granted discretionary authority. If such authority was expressly granted, the district court considers whether the decision was arbitrary and capricious. *Id.* (quoting *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011)).

Although Appellant provides no argument regarding the deference owed to BCBST's decision, and we offer no opinion thereon, we note that an analysis under the ERISA standard would not favor Appellant. As discussed, *supra*, we have determined that BCBST's decision was in accordance with the plain language included in the Plan. This would end the inquiry under the first step in an ERISA analysis. *Id.* If we were to accept Appellant's argument that the denial was de novo wrong, the Plan expressly granting BCBST discretionary authority concerning questions of medical necessity would then require us to consider whether "reasonable" grounds supported its decision. *Id.* In assessing the reasonableness of the administrator's decision-making process, "courts may not 'require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physicians' evaluation.'" *Id.* at 1134 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003)). The scientific research cited by BCBST in the PBRT policy and the sources cited by the two independent reviewers would therefore provide a "reasonable basis for the decision based upon the facts as known to the administrator at the time the decision was made." *Id.* (quoting *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989)).

nonmoving party's claim or defense." ***Rye***, 477 S.W.3d at 264. This shifted the burden to Appellant to provide specific facts showing that there is a genuine issue of material fact to be resolved at trial. ***Id.*** at 265. Appellant has failed to do so. Accordingly, the State was entitled to judgment as a matter of law and the Claims Commission's grant of summary judgment is affirmed.

## IV. CONCLUSION

The judgment of the Claims Commission is affirmed, and this matter is remanded to the Claims Commission for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant Elizabeth Clarke, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE